IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-20-166-J |
| | ) | |
| 2. CARL PHILLIP SMITH, | ) | |
| 3. THE SUCCESSORS OF CORINNE SMITH, | ) | |
| (Deceased), | ) | |
| 4. FARM CREDIT OF ENID, formerly | ) | |
| FEDERAL LAND BANK OF WICHITA, | ) | |
| 5. OKLAHOMA AG CREDIT, formerly | ) | |
| PRODUCTION CREDIT, | ) | |
| 6. STATE OF OKLAHOMA, EX REL., | ) | |
| OKLAHOMA TAX COMMISSION, | ) | |
| 7. GRANT COUNTY TREASURER, | ) | |
| 8. GRANT COUNTY BOARD OF COUNTY | ) | |
| COMMISSIONERS, | ) | |
| 9. GARFIELD COUNTY TREASURER, | ) | |
| 10. GARFIELD COUNTY BOARD OF | ) | |
| COUNTY COMMISSIONERS, | ) | |
| | ) | |
| Defendant(s). | ) | |

## COMPLAINT FOR FORECLOSURE

1. Jurisdiction depends upon 28 U.S.C. § 1345.

2. The Plaintiff United States of America, ex rel. Farm Service Agency ("FSA"), United States Department of Agriculture, holds: promissory notes and mortgages, attached hereto as Exhibits 1-20 incorporated herein and made part hereof, executed by Defendants Carl Phillip Smith and Corinne Smith (deceased).

3. Defendant Carl Phillip Smith has defaulted on the payments of said promissory notes, and mortgages, as set forth below. Therefore, Plaintiff is entitled to judgment on the stated and attached security documents as stated here:

Principal.............................................................................................. $120,690.29
Accrued interest as of May 13, 2019...................................................... $46,318.03
Amount due as of May 13, 2019 ......................................................... $167,008.32

plus accruing interest on the principal at the rate of $17.0429 *per diem* from May 13, 2019

until the date of judgment. Verification of indebtedness is attached as Exhibit 22.

3.  Plaintiff is entitled to foreclosure of its mortgage lien and sale of the mortgaged

premises in partial satisfaction of the notes and/or agreements, for the sum of $167,008.32,

which includes taxes paid, costs, advances, accrued interest, etc., as of May 13, 2019, plus

accruing interest on the stated amount due at the rate of $17.0492 per diem from May 13,

2019, advance expenses, late charges and costs.

4.  Legal description of the mortgaged premises:

**LOTS ONE (1) AND TWO (2) AND THE SOUTH HALF (S/2) OF THE
NORTHEAST QUARTER (NE/4) OF SECTION FOUR (4), TOWNSHIP
TWENTY-FOUR (24) NORTH, RANGE THREE (3) WEST OF THE INDIAN
MERIDIAN, GARFIELD COUNTY, OKLAHOMA,**

**AND**

**THE WEST HALF (W/2) OF THE SOUTHWEST QUARTER (SW/4) OF SECTION
THIRTY-ONE (31), TOWNSHIP TWENTY-FIVE (25) NORTH, RANGE THREE
(3) WEST OF THE INDIAN MERIDIAN, ALSO KNOWN AS THE WEST HALF
(W/2) OF LOTS THREE (3) AND FOUR (4) AND THE EAST HALF (E/2) OF THE
SOUTHWEST QUARTER (SW/4) OF SECTION THIRTY-ONE (31), TOWNSHIP
TWENTY-FIVE (25) NORTH, RANGE THREE (3) WEST OF THE INDIAN
MERIDIAN, GRANT COUNTY, OKLAHOMA.**

5.  Defendant Farm Credit of Enid, formerly Federal Land Bank of Wichita, may claim

some right title or interest in the mortgaged premises, but such interests are inferior and

subordinate to the mortgage lien of plaintiff.

6.  Defendant Oklahoma Ag Credit, formerly Production Credit, may claim some right title or interest in the mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

7.  Defendant Carl Phillip Smith and The Successors of Corinne Smith, (Deceased), may claim some right, title or interest in the mortgaged premises, such interests are inferior to the mortgage lien of the plaintiff.

8.  Defendant State of Oklahoma, ex rel. Oklahoma Tax Commission, as a result of estate taxes due and owing as the result of the death of Corinne Smith, may claim some right, title or interest in the mortgaged premises, such interests are inferior and subordinate to the mortgage lien of plaintiff.

9.  Defendants Grant County Treasurer and Grant County Board of County Commissioners may claim some right title or interest in the mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

10. Defendants Garfield County Treasurer and Garfield County Board of County Commissioners may claim some right title or interest in the mortgaged premises, but such interests are inferior and subordinate to the mortgage lien of plaintiff.

WHEREFORE, plaintiff prays for judgment against Defendants Carl Phillip Smith and Successors of Corinne Smith (deceased) in the sum of $167,008.32 as of May 13, 2019, together with accruing interest at the rate of $17.0429 *per diem* from May 13, 2019 to the date of judgment; and for foreclosure of its mortgage liens and security agreements,

determination of its first priority lien and priority against all defendants and the sale of the

mortgaged premises pursuant to judgment. Plaintiff elects to sell the property with

appraisal.

TIMOTHY J. DOWNING
U.S. ATTORNEY


*s/KAY SEWELL*
KAY SEWELL, OBA 10778
Assistant U.S. Attorney
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8807 phone / 553-8885 fax
Kay.Sewell@usdoj.gov

**EXHIBIT 1**

USDA-FmHA
Form FmHA 427-1 OK
(Rev. 1-26-79)

Position 5

Return To
HUMPHREY ABSTRACT CO.
Box 84, Enid

### REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by ___CARL P. SMITH (also known as Carl Phillip___

___Smith), a single person___

residing in _____Garfield_____ County, Oklahoma, whose mailing address is

___Rural Route #1_____ ___Hunter___, Oklahoma, ___74640___,

herein called "Borrower," and:

WHEREAS Borrower is indebted to the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 5-16-1979 | $135,500.00 | 3.00% | 5-16-2019 |

(If the interest rate is less than ............% for farm ownership or operating loan(s) secured by this instrument, then the rate may be changed as provided in the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration;

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a:

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County(ies) of

GARFIELD

STATE OF OKLAHOMA
COUNTY OF GARFIELD
RECORDED

MAY 16  3 05 PH '79

BK. 685  PG. 560
ROBERT C GRAF
COUNTY CLERK
BY _Annie_ DEPUTY
_Mc Kennon_

FmHA 427-1 OK (Rev. 1-26-79)

8⁰⁰

Lots One (1) and Two (2) and the South Half of the Northeast Quarter
(S½ NE¼) of Section Four (4), Township Twenty-four (24) North, Range
Three (3) West of the Indian Meridian, Garfield County, Oklahoma.


Subject, however, to all valid outstanding easements, rights-of-way,
mineral leases, mineral reservations and mineral conveyances of record.

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government--whether once or often--in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should any one of the parties named as Borrower die or be declared an incompetent, a bankrupt, or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Stillwater, Oklahoma 74074, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the mailing address shown above).

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this _____ 16th _____

day of _____ May _____ , 19 79 .

Carl P. Smith
Carl P. Smith

_____

## ACKNOWLEDGEMENT

STATE OF OKLAHOMA

COUNTY OF _____ Garfield _____  } ss:

Before me, a Notary Public in and for said State, on this _____ 16th _____ day of _____ May _____ , 19 79 ,

personally appeared _____ CARL P. SMITH (also known as Carl Phillip Smith), a single person

_____

to me known to be the identical person(s) who executed the within and foregoing instrument, and acknowledged

to me that _____ he _____ executed the same as _____ his _____ free and voluntary act and deed for the uses and

purposes therein set forth.

Given under my hand and official seal on the said date.

(SEAL)

Mae Doss
Notary Public

My commission expires: July 26, 1979

**EXHIBIT 2**

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by ___CARL P. SMITH___

residing in ___HUNTER, 74640___ _____ County, Oklahoma, whose mailing address is

___RT. 1, Hunter, Oklahoma___ _____ , ~~OKLAHOMA~~ 74640 ,
herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government":

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s), herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| Dec. 20, 1982 & | 67,570.00 | 5.75 | 12-20-2022 |
| May 16, 1979 | 135,000.00 | 3.00 | 5-16-2019 |

State of Oklahoma, County of Grant, SS: No. 601
Filed for record Feb. 10 19 83 at 10.10 A M
Recorded in Book 358 Page 99
Elaine Blubaugh _____
County Clerk Pat (Sapu)
Deputy

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument will be increased after 3 years as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County(ies)

of ___GARFIELD COUNTY and GRANT COUNTY___ :

Lots One (1) and Two (2) and the South Half (S/2) of the Northeast Quarter (NE/4) of Section Four (4), Township Twenty-four (24) North, Range Three (3) West of the Indian Meridian, Garfield County, Oklahoma, and

The West Half (W/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North, Range Three (3) West of the Indian Meridian, also known as the West Half (W/2) of Lots Three (3) and Four (4) and the East Half (E/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North, Range Three (3) West of the Indian Meridian, Grant County, Oklahoma

together with all rights, interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)   To comply with all laws, ordinances, and regulations affecting the property.

(11)   To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)   Neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)   At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)   The Government may (a) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (b) release any party who is liable under the note or for the debt from liability to the Government, (c) release portions of the property and subordinate its lien, and (d) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often–in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)   If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)   Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)   SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent, or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)   The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)   Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(22) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated, in a notice so given, in the case of the Government to Farmers Home Administration at Stillwater, Oklahoma 74074, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the mailing address shown above).

(23) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___20___

day of ___December___ , 19 _82_.

CARL P. SMITH, a single person

## ACKNOWLEDGMENT

STATE OF OKLAHOMA  
COUNTY OF __Garfield__ } ss:

The foregoing instrument was acknowledged before me this ___20th___ day of

__December__ , 19 _82_, by ___CARL P. SMITH, a single person___  
(name of person acknowledging)

(SEAL)

STATE OF OKLAHOMA  
COUNTY OF GARFIELD  
RECORDED

DEC 20   2 44 PM '82

BK. _842_ PG. _114_

ROBERT G. GRAF  
COUNTY CLERK  
__Beth__ DEPUTY

Notary Public

My commission expires:

__June 19, 1983__

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA  
COUNTY OF _____ } ss:

The foregoing instrument was acknowledged before me this _____ day of

_____ , 19 ___, by _____ , _____  
(name of officer or agent)          (title of officer or agent)

_____ , a _____  
(name of corporation acknowledging)          (state or place of incorporation)

corporation, on behalf of the corporation.

(SEAL)

Notary Public

My commission expires:

**EXHIBIT 3**

USDA-FmHA
Form FmHA 427-1 OK
(Rev. 3-90)

NOTE: The United States of America, acting through Farm Service Agency (FSA), formerly known as Consolidated Farm Service Agency, formerly known as Farmers Home Administration.

File and return to: Farm Service Agency: 302 North Independence, Suite 910 : Enid, OK 73701

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by _____

CARL P. SMITH, A SINGLE PERSON   (aka Carl Phillip Smith)

residing in    GARFIELD _____ County, Oklahoma, whose mailing address is

ROUTE ONE, BOX 77 :   HUNTER _____, Oklahoma, _____ 74640 _____,

herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government";

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04-10-1996 | $137,375.69 | 03.00% | 04-10-2018 |
| 04-10-1996 | $ 24,212.41 | 05.00% | 04-10-2022 |

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County(ies) of    GARFIELD _____ :

Lots One (1) and Two (2) and the South Half (S/2) of the Northeast Quarter (NE/4) of Section Four (4), Township Twenty-four (24) North, Range Three (3), W.I.M., Garfield County, Oklahoma.

REAL ESTATE MTG. TAX $ *None*

PAID *4-12-96* REC. NO. *04306*

*Sherry Kelley*

FmHA 427-1 OK (Rev. 3-90)

BOOK **1320** PAGE **486**

It is expressly agreed by and between the parties that this mortgage is a continuation of a lien or liens created by prior mortgages between said parties on the premises described above, being identified as follows:

| DATED | RECORDED | BOOK | PAGE | IN THE OFFICE OF: |
|-------|----------|------|------|-------------------|
| 05-16-1979 | 05-16-1979 | 685 | 560 | Garfield County Clerk |

It is the intent of the parties that the notes described in this instrument are further evidence of the debts described in the former mortgages, and that the execution and delivery of this instrument does not discharge the debt or liens of such earlier notes and mortgages.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds thereof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided in Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

when account is serviced in accordance with FmHA regulations that this mortgage is a continuation of a lien created under a

prior mortgage upon said premises recorded on _____28TH_____ day of _____DECEMBER_____ ____1982____,

in Book ___842___ at Page ___114___ , in the office of the County Clerk of _____GARFIELD_____

County, Oklahoma. It is the intent of the parties of this instrument that the note(s) described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

(23) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Stillwater, Oklahoma 74074, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the mailing address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ____TENTH (10TH)____

day of _____APRIL_____ 19_96_

_____
CARL P. SMITH, a single person

## ACKNOWLEDGMENT

STATE OF OKLAHOMA

COUNTY OF ___Garfield___ } ss:

The foregoing instrument was acknowledged before me this ____TENTH (10TH)____ day of

_____, 19_96_, by __Carl P. Smith, a single person__

(SEAL)

_Notary Public_   Doris E. Mercer

My commission expires:
September 16, 1996

STATE OF OKLAHOMA
COUNTY OF GARFIELD
RECORDED

Apr 12  12 16 PM '96

BK 1320  486

CARL J. HINES
COUNTY CLERK
BY _Kim Goodman_

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA

COUNTY OF _____ } ss:

The foregoing instrument was acknowledged before me this _____ day of

_____, 19 ___, by _____

_____, a

corporation, on behalf of the corporation.

(SEAL)

_____
_Notary Public_

My commission expires: _____

USDA-FmHA
Form FmHA 427-1 OK
(Rev. 3-90)

EXHIBIT 4

BOOK **497** PAGE **795**

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by

CARL P. SMITH, A single person, aka Carl Phillip Smith

residing in GARFIELD County, Oklahoma, whose mailing address is

Route One, Box 77 : Hunter, , Oklahoma, 74640

herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, herein called the "Government":

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04-10-1996 | $137,375.69 | 03.00% | 04-10-2018 |
| 04-10-1996 | $ 24,212.41 | 05.00% | 04-10-2022 |

R.E. MTG. TAX —0—
CERT. FEES 5⁰⁰ DATED 4-12-96
REC. NO. # 4763 *Jerry Dark*
Jerry Dark, Co. Treas.

State of Oklahoma, County of Grant, ss: No. 0717
Filed for record April 12, 1996 at 12:50? M
Recorded in Book 497 Page 795
Norma Adams
County Clerk          Deputy

(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, Title V of the Housing Act of 1949 or any other statute administered by the Farmers Home Administration.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any interest credit or subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. §1490a or any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County(ies)

of + Grant

The West Half (W/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North, Range three (3) W.I.M., also known as the West half (W/2) of Lots Three (3) and Four (4) and the East Half (E/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North, Range Three (3), W.I.M., Grant County, Oklahoma

FmHA 427-1 OK (Rev. 3-90)

NOTE: The United States of America, acting through Farm Service Agency (FSA), formerly known as Consolidated Farm Service Agency, formerly known as Farmers Home Administration.

File and Return to: Farm Service Agency: 302 North Independence, Suite 910 :: Enid, OK /3/01

BOOK 497 PAGE 796

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds thereof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12)  Except as otherwise provided in Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)  At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)  The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)  If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)  Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)  SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)  The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19)  Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20)  If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, or national origin, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, or national origin.

(21)  Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) Borrower further agrees that when real estate is taken as additional security and/or the final due date is extended when account is serviced in accordance with FmHA regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded on ___10TH___ day of ___February___, ___1983___ in Book ___358___ at Page ___99___, in the office of the County Clerk of ___Grant___ County, Oklahoma. It is the intent of the parties of this instrument that the note(s) described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

(23) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at Stillwater, Oklahoma 74074, and in the case of Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the mailing address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___Tenth (10TH)___

day of ___April___, 19__96__

_____
CARL P. SMITH, a single person

## ACKNOWLEDGMENT

STATE OF OKLAHOMA  }  ss:
COUNTY OF ___Garfield___  }

The foregoing instrument was acknowledged before me this ___10TH___ day of ___, 19__96__, by ___Carl P. Smith, a single person___

_____
(SEAL)   Notary Public   DORIS E. MERCER

My commission expires:
___September 16, 1996___

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA  }  ss:
COUNTY OF _____  }

The foregoing instrument was acknowledged before me this _____ day of _____, 19___, by _____, _____

_____, a

corporation, on behalf of the corporation.

(SEAL)

_____
Notary Public

My commission expires:

_____



EXHIBIT 5



*Position 5*

STATE OF OKLAHOMA
COUNTY OF GARFIELD
RECORDED

2001 JAN 18  A 10: 52

BK *1517* PG *907*
KATHY R. HUGHES
COUNTY CLERK
BY_____ *NE*

MAC
USDA
Form RD 1927-1 OK
(Rev. 6-99)

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by _____

_____ CARL P. SMITH, a/k/a CARL PHILLIP SMITH, A Single Person

residing in _____ GARFIELD _____County, Oklahoma, whose mailing

address is _____ ROUTE 1, HUNTER _____, Oklahoma, __74640__, herein
called "Borrower," and the United States of America, acting through the United States Department of Agriculture, herein called the "Government," ~~x Government x~~ Farm Service Agency, herein called the "Government".

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory notes or assumption agreements or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04-10-1996 | $ 137,375.69 | 03.00% | 04-10-2018 |
| 04-10-1996 | $  24,212.41 | 05.00% | 04-10-2022 |
| 01-16-2001 | $  10,000.00 | 05.00% | 01-16-2002 |

REAL ESTATE MTG. TAX $ ─ 0 ─
RCT.
PAID/─18-01 NO. *1423*
By *Denise Nichus*
TREAS. DEPUTY

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note pursuant to the Consolidated Farm and Rural Development Act, title V of the Housing Act of 1949 or any other statute administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument, this instrument shall secure payment of the note.

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loans and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement. Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County or Counties of _____ GARFIELD _____.

Lots One (1) and Two (2) and the South Half (S/2) of the Northeast Quarter (NE/4) of Section Four (4), Township Twenty-four (24) North, Range Three (3) WIM, Garfield County, Oklahoma.

FILE AND RETURN TO: Farm Service Agency, 1216 W. Willow, Suite C, Enid, OK 73703

RD 1927-1 OK (Rev. 6-99)

*21*

Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded as follows:

| DATE | TYPE OF INSTRUMENT | PLACE OF FILING | FILING DATE | BOOK | PAGE |
|------|--------------------|-----------------| -----------|------|------|
| 04-10-96 | Real Estate Mtg. | Garfield County Clerk | 04-12-96 | 1320 | 486 |
| 04-10-96 | Real Estate Mtg. | Garfield County Clerk | 04-12-96 | 1320 | 490 |
| 05-16-79 | Real Estate Mtg. | Garfield County Clerk | 05-16-79 | 685 | 560 |
| 12-20-82 | Real Estate Mtg. | Garfield County Clerk | 12-28-82 | 842 | 114 |

It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds therof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)    To pay promptly when due any indebtedness to the Government hereby secured.

(2)    To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)    If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)    The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)    All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)    To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)    To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)    To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)    To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be neccessary for ordinary domestic purposes.

(10)    To comply with all laws, ordinances, and regulations affecting the property.

(11)    To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.                                                                              RD 1927-1 OK (Page 2 of 4) (6-99)

(12) Except as otherwise provided in Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. At foreclosure or other sale of all of any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, age, or familial status.

(21) Borrower further agrees that the loan secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

(22)    Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded on ____N/A____ day of ____N/A____, _____, in Book N/A at Page N/A, in the office of the County Clerk of ____N/A____ County, Oklahoma. It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

(23)    This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24)    Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to 1216 West Willow, Suite C, Enid, Oklahoma   73703 , and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

(25)    If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____16th_____ day of _____January_____, 2001 .

_____Carl P. Sm_____

## ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF ____Garfield____ } ss:

The foregoing instrument was acknowledged before me this _____16th_____ day of January, 2001 by ____Carl P. Smith, A Single Person____

(SEAL)

_____Donna K Biggers_____
Notary Public.   DONNA K BIGGERS

My commission expires: ____03-29-2001____

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _____ } ss:

The foregoing instrument was acknowledged before me this _____ day of _____, _____ by _____, a _____ corporation, on behalf of the corporation.

(SEAL)

RECEIVED
JAN 30 2001
GARFIELD CO. F.S.A.

_____
Notary Public.

My commission expires: _____

00000645

**EXHIBIT 6**

BOOK 532 PAGE 265

MAC
USDA
Form RD 1927-1 OK
(Rev. 6-99)

Position 5

State of Oklahoma, County of Grant, SS: No. 117
Filed for record January 18 20 01 at 11:35 AM
Recorded in Book 532 Page 265
Becky Kretchmar
County Clerk                    Teresa Cope    Deputy

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by _____

_____ CARL P. SMITH, a/k/a CARL PHILLIP SMITH, A Single Person _____

residing in ___GARFIELD_____County, Oklahoma, whose mailing

address is ___ROUTE 1,   HUNTER_____, Oklahoma, _74640_____, herein
called "Borrower," and the United States of America, acting through the United States Department of Agriculture, herein called the
"Government":

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory notes or assumption agreements
or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order
of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower,
and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 04-10-1996 | $ 137,375.69 | 03.00% | 04-10-2018 |
| 04-10-1996 | $  24,212.41 | 05.00% | 04-10-2022 |
| 01-16-2001 | $  10,000.00 | 05.00% | 01-16-2002 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in the Government regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note pursuant to the Consolidated
Farm and Rural Development Act, title V of the Housing Act of 1949 or any other statute administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government,
or in the event the Government should assign this instrument, this instrument shall secure payment of the note.

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into
pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loans and (a) at all times when the note is held by the Government, or in the event
the Government should assign this instrument to secure prompt payment of the note and any renewals and extensions thereof and any
agreements contained therein, and (b) to secure the prompt payment of all advances and expenditures made by the Government, with
interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any
supplementary agreement. Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property
situated in the State of Oklahoma, County or Counties of ___GRANT_____

The West Half of the Southwest Quarter (W/2 SW/4) of Section
Thirty-one (31), Township Twenty-five (25) North, Range Three (3)
WIM, also known as the West Half (W/2) of Lots Three (3) and Four (4),
and the East Half of the Southwest Quarter (E/2 SW/4) of Section
Thirty-one (31), Township Twenty-five (25) North, Range Three (3) WIM,
Grant County, Oklahoma.

FILE AND RETURN TO:  Farm Service Agency, 1216 W. Willow, Suite C, Enid, OK  73703

RD 1927-1 OK (Rev. 6-99)

BOOK 332 PAGE 266

Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded as follows:

| DATE | TYPE OF INSTRUMENT | PLACE OF FILING | FILING DATE | BOOK | PAGE |
|------|--------------------|-----------------|-------------|------|------|
| 04-10-96 | Real Estate Mtg. | Grant County Clerk | 04-12-96 | 497 | 795 |
| 04-10-96 | Real Estate Mtg. | Grant County Clerk | 04-12-96 | 497 | 799 |
| 12-20-82 | Real Estate Mtg. | Grant County Clerk | 02-10-83 | 358 | 99 |

It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied. R.E. MTG. TAX $ ⁰ DATED 1-18-01

CERT. FEES $ 5.⁰⁰ REC. # 6397

Elaine Webster, Co. Treas.

Deputy

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds therof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)  To pay promptly when due any indebtedness to the Government hereby secured.

(2)  To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)  If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)  The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)  All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)  To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)  To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)  To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)  To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be neccessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

BOOK 532 PAGE 267

(12)   Except as otherwise provided in Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)   At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)   The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)   If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)   Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)   SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)   The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. At foreclosure or other sale of all of any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)   Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20)   If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, age, or familial status.

(21)   Borrower further agrees that the loan secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

BOOK 532 PAGE 268

(22) Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded on _____N/A_____ day of _____N/A_____, _____, in Book _N/A_ at Page _N/A_, in the office of the County Clerk of _____N/A_____ County, Oklahoma. It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

(23) This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _____1216 W. Willow, Suite C,_____

_____Enid, Oklahoma   73703_____, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____16th_____ day of

_____January_____, _2001_.                    *Carl P. St*

## ACKNOWLEDGMENT

STATE OF OKLAHOMA } ss:
COUNTY OF _____Garfield_____

The foregoing instrument was acknowledged before me this _____16th_____ day of

_January_, _2001_ by _Carl P. Smith, A Single Person_

(SEAL)                    *Donna K Biggers*
                    Notary Public.   DONNA K. BIGGERS

                    My commission expires: _03-29-2001_

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA } ss:
COUNTY OF _____

The foregoing instrument was acknowledged before me this _____ day of

_____, _____ by _____

_____, a _____

corporation, on behalf of the corporation.

(SEAL)                    _____
                    Notary Public.

                    My commission expires: _____

**EXHIBIT 7**

Bk1588 Pg21



5483
State of Oklahoma
County of Garfield
RECORDED
5/21/2002 10:57AM
Bk _1588_ Pg _21_
Kathy R. Hughes
County Clerk
By _____

*Position 5*

USDA
Form RD 1927-1 OK
(Rev. 6-99)

# REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by _____

_____CARL P. SMITH, a/k/a CARL PHILLIP SMITH, A Single Person_____

residing in _____GARFIELD_____County, Oklahoma, whose mailing

address is _____RR 1  BOX 77  HUNTER_____, Oklahoma, _74640_, herein
called "Borrower," and the United States of America, acting through the United States Department of Agriculture, herein called the "Government":

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory notes or assumption agreements or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05-15-2002 | $ 4,800.00 | 04.75% | 05-15-2003 |
| 05-15-2002 | $117,487.53 | 03.00% | 05-15-2019 |
| 05-15-2002 | $ 30,064.91 | 05.00% | 05-15-2022 |
| 05-15-2002 | $ 10,617.06 | 04.75% | 05-15-2017 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in the Government regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note pursuant to the Consolidated Farm and Rural Development Act, title V of the Housing Act of 1949 or any other statute administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument, this instrument shall secure payment of the note.

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loans and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, and (b) to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement. Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property situated in the State of Oklahoma, County or Counties of _____GARFIELD_____.

Lots One (1) and Two (2) and the South Half (S/2) of the Northeast Quarter (NE/4) of Section Four (4), Township Twenty-four (24) North, Range Three (3) WIM, Garfield County, Oklahoma.

FILE AND RETURN TO:
Farm Service Agency
1216 W Willow  Suite C
Enid  OK  73703

REAL ESTATE MTG. TAX $ -0-
RCT.
PAID 5-21-02 NO. 2958
By _Cheryl Reed_
TREAS.   DEPUTY

Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded as follows:

| DATE | TYPE OF INSTRUMENT | PLACE OF FILING | BOOK | PAGE |
|------|--------------------|-----------------|------|------|
| 04-10-96 | Real Estate Mtg. | Garfield County Clerk | 1320 | 486 |
| 04-10-96 | Real Estate Mtg. | Garfield County Clerk | 1320 | 490 |
| 05-16-79 | Real Estate Mtg. | Garfield County Clerk | 685 | 560 |
| 12-20-82 | Real Estate Mtg. | Garfield County Clerk | 842 | 114 |
| 01-16-01 | Real Estate Mtg. | Garfield County Clerk | 1517 | 910 |

It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds therof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be neccessary for ordinary domestic purposes.

(10)   To comply with all laws, ordinances, and regulations affecting the property.

(11)   To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

RD 1927-1 OK (Page 2 of 4) (6-99)

Bk1588 Pg23

(12)   Except as otherwise provided in Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)   At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)   The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)   If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan, in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)   Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)   SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)   The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. At foreclosure or other sale of all of any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)   Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20)   If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, age, or familial status.

(21)   Borrower further agrees that the loan secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

RD 1927-1 OK (Page 3 of 4) (6-99)

Bk1588 Pg24

(22)   Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior

mortgage upon said premises recorded on _____N/A_____ day of _____N/A_____ , __N/A__, in Book __N/A__ at

Page __N/A__ , in the office of the County Clerk of _____N/A_____ County, Oklahoma. It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

(23)   This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

(24)   Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some

other address is designated in a notice so given, in the case of the Government to _1216 W. Willow, Suite C,_____

___Enid, Oklahoma  73703_____ , and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

(25)   If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____15th_____ day of

____May____ , ___2002___

## ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _____Garfield_____ } ss:

The foregoing instrument was acknowledged before me this _____15th_____ day of

__May__, 2002  by __Carl Phillip Smith__ .

(SEAL)

*Notary Public* DONNA K. BIGGERS

My commission expires: ___03-29-2005___

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _____ } ss:

The foregoing instrument was acknowledged before me this _____ day of

_____ , _____ by _____

_____ , a _____

corporation, on behalf of the corporation.

(SEAL)

_____
*Notary Public.*

My commission expires: _____

**EXHIBIT 8**

MAC

R.E. MTG. TAX $ _EXEMPT_ DATED _5-21-02_
CERT. FEES $ _5.00_    REC. # _6838_

~~Foulberg~~ Deputy
Elaine Webster, Co. Treas.

USDA
Form RD 1927-1 OK
(Rev. 6-99)

BOOK 542 PAGE 560

*Position 5*

State of Oklahoma, County of Grant, SS: No. _839_
Filed for record _May 21_ 20 _02_ at _10:40_ M
Recorded in Book _542_ Page _560_
Becky Kreichmar
County Clerk _____ Deputy

## REAL ESTATE MORTGAGE FOR OKLAHOMA

THIS MORTGAGE is made and entered into by _____

CARL P. SMITH, a/k/a CARL PHILLIP SMITH, A Single Person

residing in ___Garfield___ County, Oklahoma, whose mailing

address is ___RR 1 Box 77,    Hunter___, Oklahoma, ___74640___, herein
called "Borrower," and the United States of America, acting through the United States Department of Agriculture, herein called the
"Government":

WHEREAS Borrower is indebted to the "Government," as evidenced by one or more promissory notes or assumption agreements
or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order
of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower,
and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05-15-2002 | $ 4,800.00 | 04.75% | 05-15-2003 |
| 05-15-2002 | $117,487.53 | 03.00% | 05-15-2019 |
| 05-15-2002 | $ 30,064.91 | 05.00% | 05-15-2022 |
| 05-15-2002 | $ 10,617.06 | 04.75% | 05-15-2017 |

(The interest rate for limited resource farm ownership or limited resource operating loans secured by this instrument may be
increased as provided in the Government regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note pursuant to the Consolidated
Farm and Rural Development Act, title V of the Housing Act of 1949 or any other statute administered by the Government.

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government,
or in the event the Government should assign this instrument, this instrument shall secure payment of the note.

And this instrument also secures any amounts due under any Shared Appreciation Agreement/Recapture Agreement entered into
pursuant to 7 U.S.C. 2001.

NOW, THEREFORE, in consideration of the loans and (a) at all times when the note is held by the Government, or in the event
the Government should assign this instrument to secure prompt payment of the note and any renewals and extensions thereof and any
agreements contained therein, and (b) to secure the prompt payment of all advances and expenditures made by the Government, with
interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any
supplementary agreement. Borrower does hereby grant, convey, mortgage, and assign unto the Government, the following property
situated in the State of Oklahoma, County or Counties of _____GRANT_____.

The West Half of the Southwest Quarter (W/2 SW/4) of Section Thirty-one (31),
Township Twenty-five (25) North, Range Three (3) WIM, also known as the West Half (W/2)
of Lots Three (3) and Four (4), and the East Half of the Southwest Quarter (E/2 SW/4)
of Section Thirty-one (31), Township Twenty-five (25) North, Range Three (3) WIM,
Grant County, Oklahoma.

FILE AND RETURN TO:  FARM SERVICE AGENCY
                     1216 W. Willow, Suite C
                     Enid, OK  73703

RD 1927-1 OK (Rev. 6-99)

BOOK 542 PAGE 561

Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded as follows:

| DATE | TYPE OF INSTRUMENT | PLACE OF FILING | BOOK | PAGE |
|------|-------------------|-----------------|------|------|
| 04-10-96 | Real Estate Mtg | Grant County Clerk | 497 | 795 |
| 04-10-96 | Real Estate Mtg | Grant County Clerk | 497 | 799 |
| 12-20-82 | Real Estate Mtg | Grant County Clerk | 358 | 99 |
| 01-16-01 | Real Estate Mtg | Grant County Clerk | 532 | 265 |

It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals along with all timber growing on or cut from said land, and all proceeds therof), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues, and profits thereof and revenues and income therefrom, all improvements, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of, or payment of surface damages on, any part thereof or interest therein-all of which are herein called "the property";

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors, and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1)   To pay promptly when due any indebtedness to the Government hereby secured.

(2)   To pay to the Government such fees and other charges as may now or hereafter be required by Government regulations.

(3)   If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4)   The Government may at any time pay any other amounts including advances for payment of prior or junior liens, required herein to be paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for Borrower's account. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5)   All advances by the Government, including advances for payment of prior or junior liens, in addition to any advances required by the terms of the note, as described by this instrument, with interest shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6)   To use the loan evidenced by the note solely for purposes authorized by the Government.

(7)   To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property, including all charges and assessments in connection with water, water rights and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8)   To keep the property insured as required by and under insurance policies approved by the Government, at its request, to deliver such policies to the Government.

(9)   To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be neccessary for ordinary domestic purposes.

(10)  To comply with all laws, ordinances, and regulations affecting the property.

(11)  To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instrumen*⸴ attorneys' fees, trustees' fees, court costs, ⌐ ' expenses of advertising, selling, and conveying the property.                    (

BOOK 542 PAGE 562

(12)   Except as otherwise provided in Government regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations, and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13)   At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14)   The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the Government—whether once or often—in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15)   If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16)   Default hereunder shall constitute default under any other real estate, or under any personal property, or other security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17)   SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be discharged in bankruptcy or declared an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future laws.

(18)   The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to the Government, and (f) any balance to Borrower. At foreclosure or other sale of all of any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

(19)   Borrower agrees that the Government will not be bound by any present or future laws, (a) providing for homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy. Borrower waives appraisement of the property, or not, at the option of the Government, to be declared when any Petition to Foreclose is filed.

(20)   If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, age, or familial status, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, age, or familial status.

(21)   Borrower further agrees that the loan secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as prohibited by 7 C.F.R. part 1940, subpart G.

RD 1927-1 OK (Page 3 of 4) (6-99)

BOOK **542** PAGE **563**

    (22)    Borrower further agrees that when real estate is taken as additional security or the final due date is extended when account is serviced in accordance with Government regulations that this mortgage is a continuation of a lien created under a prior mortgage upon said premises recorded on _____N/A_____ day of _____N/A_____, _N/A_, in Book _N/A_ at Page _N/A_, in the office of the County Clerk of _____N/A_____ County, Oklahoma. It is the intent of the parties of this instrument that the notes described in this instrument is further evidence of the debt described in the prior mortgage and does not discharge the prior mortgage or debt secured by that mortgage. The prior security instruments will not be released until the debt is fully satisfied.

    (23)    This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof.

    (24)    Notices given hereunder shall be sent by certified mail, unless otherwise required by law, addressed, unless and until some other address is designated in a notice so given, in the case of the Government to _1216 W. Willow, Suite C,_ _____ _Enid, Oklahoma   73703_ _____, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

    (25)    If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hands and seals this _____15th_____ day of _____May_____, _2002_

## ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _____Garfield_____ } ss:

    The foregoing instrument was acknowledged before me this _____15th_____ day of _May_ _2002_ by _Carl Phillip Smith_

(SEAL)

*Notary Public.* \ DONNA K. BIGGERS

My commission expires: _____03-29-2005_____

## CORPORATE ACKNOWLEDGMENT

STATE OF OKLAHOMA
COUNTY OF _____ } ss:

    The foregoing instrument was acknowledged before me this _____ day of _____ , _____ by _____

_____, a _____

corporation, on behalf of the corporation.

(SEAL)

_____

*Notary Public.*

My commission expires: _____



**FILE & RETURN TO:**
FARM LOAN PROGRAMS TEAM
ENID SERVICE CENTER
GARFIELD COUNTY FSA OFFICE
1216 W WILLOW RD STE C
ENID  OK 73703-2532

Position 5

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

## MORTGAGE FOR OKLAHOMA

REAL ESTATE MTG. TAXS *N/A*
PAID *6-30-06* RCT.
NO. *2978*
BY *Martin Carl*
TREAS. – DEPUTY

THIS MORTGAGE ("instrument") is made on MAY 26 , 20 06 . The mortgagor is

CARL PHILLIP SMITH aka Carl P. Smith, Carl Smith, a single person

("Borrower") whose mailing address is RR 1 BOX 77 : HUNTER   OKLAHOMA   74640

. This instrument is given to the United States of America, acting

through the Farm Service Agency, United States Department of Agriculture ("Government") located at

1216 WEST WILLOW ROAD, SUITE C : ENID   OKLAHOMA   73703-2536

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt on any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05-26-2006 | $12,000.00 | 04.2500% | 05-26-2031 |
| 05-15-2002 | $10,617.06 | 04.7500% | 05-15-2017 |
| 05-15-2002 | $117,487.53 | 03.0000% | 05-15-2019 |
| 05-15-2002 | $30,064.91 | 05.0000% | 05-15-2022 |

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government:  (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U. S. C.  § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U. S. C.  § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Oklahoma, County or Counties of GARFIELD                                                                                :

See attached Exhibit A for legal description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property").  This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised  of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record.  Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

Initial *CS*  date 05-26-2006

UNIFORM COVENANTS.  Borrower COVENANTS AND AGREES as follows:

    1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

    2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

    3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

    4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

    5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

    6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U.S. C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

    7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

    8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement of or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments; attorneys' fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

    9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

    10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government, and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

    11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

    12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

    13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

    14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge. If

Initial _C S_  date _05-26-2006_

If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument.

**NON-UNIFORM COVENANTS.** Borrower further COVENANTS AND AGREES as follows:

**27. Default; Government's Remedies upon Default.** Default occurs under this instrument if Borrower breaches any covenant, obligation or agreement contained in this instrument or in the note secured by this instrument. Upon default, the Government shall give notice of the default to Borrower prior to acceleration if required by applicable law. If the default is not cured, the Government, at its option, may: (a) accelerate the maturity of the note and declare immediately due and payable the entire amount unpaid under the note and any other indebtedness which is secured by this instrument; (b) for the account of Borrower, incur and pay reasonable expenses for the repair and maintenance of and take possession of, operate or rent the property; (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases; (d) foreclose this instrument and sell the property in accordance with the remedies provided in this instrument and under applicable federal or state law; and (e) enforce any and all other rights and remedies provided herein or by present or future law. Proceeding under this instrument, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

**28. Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

**29. Waiver.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

**30. Collection of Assigned Monies.** Borrower agrees that the Government has the immediate right to collect and receive any and all monies covered under the assignment provided in paragraph 5 of this instrument. In the event that Borrower receives such monies directly, Borrower will immediately deliver such monies to Government with any necessary endorsements.

**31. Entitlement to Abstracts.** In the event that this mortgage is foreclosed or if the property is conveyed by Borrower to Government, Government shall be entitled to all abstracts and other evidences of title pertaining to the property. Upon demand by Government, Borrower agrees to immediately deliver such abstracts and other evidences of title to Government. The definition of "property" herein is amended to include such abstracts and other evidences of title.

**32. Replacement and Corrected Documents.** If any document material to this loan transaction is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of this loan transaction, upon request by the Government, Borrower will comply with the Government's request to execute, acknowledge, initial and deliver to the Government any and all documentation the Government deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s).

**33. Additional Documents.** Borrower shall, upon request by the Government, execute, acknowledge and deliver to the Government any and all additional documents, instruments and further assurances as may be necessary or proper in the Government's opinion, to effect the intent of this loan transaction or to provide the Government with the security required or contemplated for this loan transaction.

**34. Subrogation.** If any of the proceeds of the note or advances made under the note or this instrument are used to take up outstanding liens against all or any part of the property, the Government shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by the Government by assignment or are released by the holder thereof upon payment.

**35. Riders to this Instrument.** If one or more riders are executed by Borrower and recorded together with this instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument as if the riders were a part of this instrument. [Check applicable boxes]

☒ Extension of Lien Rider          ☐ Refinancing Rider          ☐ Other(s) [specify] _____

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)                    _____ (SEAL)
CARL PHILLIP SMITH

_____ (SEAL)                    _____ (SEAL)

ACKNOWLEDGMENTS

(Individual)

STATE OF OKLAHOMA          }
COUNTY OF GARFIELD         } ss.

On this 26TH day of MAY, 2006 , before me personally appeared CARL P. SMITH, A SINGLE PERSON

_____ , to be known to me to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

_____

_____                    _____
                                              DORIS E. MERCER
                                              NOTARY PUBLIC

*Note: Page 5 of 5 applies to entities only and will not be recorded for individuals.*

FSA 1927-1 OK (10-07-02) *Page 4 of 5*

Bk1815 Pg1131

## EXHIBIT "A"

### (Incorporated herewith to Mortgage dated 05-26-2006)

## MORTGAGOR:

SMITH, Carl Phillip, a single person

## LEGAL DESCRIPTION(S):

Lots One (1) and Two (2) and the South Half of the Northeast Quarter (S/2 NE/4) of Section Four (4), Township Twenty-four (24) North, Range Three (3), West of the Indian Meridian, Garfield County, Oklahoma.

Subject, however, to all valid outstanding easements, rights-of-way, mineral leases, mineral reservations and mineral conveyances of record.

Initial _ C S_      date   05-26-2006

Bk1815 Pg1132

7952

FSA 1927-1A OK
(10-07-02)

## EXTENSION OF LIEN RIDER

THIS EXTENSION OF LIEN RIDER is made this ___26th___ day of _____May_____, 2006  and is incorporated by reference into and shall be deemed to amend and supplement the Mortgage ("instrument") of the same date given by the undersigned ("Borrower") to secure payment of the Note described in said instrument, to the United States of America acting through the Farm Service Agency, United States Department of Agriculture ("Government") of the same date and covering the Property described in the instrument.

In addition to the covenants and agreements made in the instrument, Borrower and the Government further covenant and agree as follows:

1. When the final due date on an existing Note or Notes is extended, this mortgage is a continuation of a lien created under a prior mortgage or mortgages upon said Property, being identified as follows:

| DATED | RECORDED | BOOK | PAGE | IN THE OFFICE OF THE COUNTY CLERK OF |
|---|---|---|---|---|
| 05-16-1979 | 05-16-1979 | 685 | 560 | Garfield County, Oklahoma |
| 12-20-1982 | 12-28-1982 | 842 | 114 | Garfield County, Oklahoma |
| 04-10-1996 | 04-12-1996 | 1320 | 490 | Garfield County, Oklahoma |
| 01-16-2001 | 01-18-2001 | 1517 | 907 | Garfield County, Oklahoma |
| 05-15-2002 | 05-21-2002 | 1588 | 21 | Garfield County, Oklahoma |

2. It is the intent of the parties to this instrument that the Note or Notes described in this instrument is (are) further evidence of the debt described in the prior mortgage or debt secured by that mortgage or mortgages.

3. The prior mortgage will not be released until the debt secured by said mortgage is fully satisfied.

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Extension of Lien Rider.

_____
CARL PHILLIP SMITH

7952
State of Oklahoma
County of Garfield
RECORDED
6/30/2006 10:13AM
Bk 1815 Pg 1127
Kathy R. Hughes
County Clerk
By _____

SEAL

**EXHIBIT 10**

BOOK 573 PAGE 750

State of Oklahoma, County of Grant, SS
Filed for record June 30 20
Recorded in Book 573 Page 750
Debbie Kretchmar
County Clerk          Deputy

FILE & RETURN TO:
FARM LOAN PROGRAMS TEAM
ENID SERVICE CENTER
GARFIELD COUNTY FSA OFFICE
1216 W WILLOW RD STE C
ENID OK 73703-2532

Position 5

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

## MORTGAGE FOR OKLAHOMA

THIS MORTGAGE ("instrument") is made on MAY 26 , 20 06 . The mortgagor is

CARL PHILLIP SMITH aka Carl P. Smith, Carl Smith, a single person

("Borrower") whose mailing address is RR 1 BOX 77 : HUNTER    OKLAHOMA    74640

. This instrument is given to the United States of America, acting

through the Farm Service Agency, United States Department of Agriculture ("Government") located at

1216 WEST WILLOW ROAD, SUITE C : ENID OKLAHOMA 73703-2536

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05-26-2006 | $12,000.00 | 04.2500% | 05-26-2031 |
| 05-15-2002 | $10,617.06 | 04.7500% | 05-15-2017 |
| 05-15-2002 | $117,487.53 | 03.0000% | 05-15-2019 |
| 05- | $30,064.91 | 05.0000% | 05-15-2022 |

RE. MTG. TAX $ exempt DATED 6-30-06
CERT. FEES $ 5.00 REC. # 3107
Wayne Webster  Elaine Webster, Co. Treas.
_____ Deputy

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U. S. C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U. S. C. § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Oklahoma, County or Counties of GRANT :

See attached Exhibit A for legal description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

Initial CS  date 05-26-2006                    FSA 1927-1 OK (10-07-02) *Page 1 of 5*

BOOK 573 PAGE 757

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U. S. C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments; attorneys' fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government, and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge.

Initial _C S_   date _05-26-2006_                                         FSA 1927-1 OK (10-07-02`

BOOK 573 PAGE 758

If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not b affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrumer

Initial _QS_   date _05-26-2006_                                                                 FSA 1927-1 OK (10-07-02`

BOOK 573 PAGE 759

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; Government's Remedies upon Default.** Default occurs under this instrument if Borrower breaches any covenant, obligation or agreement contained in this instrument or in the note secured by this instrument. Upon default, the Government shall give notice of the default to Borrower prior to acceleration if required by applicable law. If the default is not cured, the Government, at its option, may: (a) accelerate the maturity of the note and declare immediately due and payable the entire amount unpaid under the note and any other indebtedness which is secured by this instrument; (b) for the account of Borrower, incur and pay reasonable expenses for the repair and maintenance of and take possession of, operate or rent the property; (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases; (d) foreclose this instrument and sell the property in accordance with the remedies provided in this instrument and under applicable federal or state law; and (e) enforce any and all other rights and remedies provided herein or by present or future law. Proceeding under this instrument, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

28. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

29. **Waiver.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

30. **Collection of Assigned Monies.** Borrower agrees that the Government has the immediate right to collect and receive any and all monies covered under the assignment provided in paragraph 5 of this instrument. In the event that Borrower receives such monies directly, Borrower will immediately deliver such monies to Government with any necessary endorsements.

31. **Entitlement to Abstracts.** In the event that this mortgage is foreclosed or if the property is conveyed by Borrower to Government, Government shall be entitled to all abstracts and other evidences of title pertaining to the property. Upon demand by Government, Borrower agrees to immediately deliver such abstracts and other evidences of title to Government. The definition of "property" herein is amended to include such abstracts and other evidences of title.

32. **Replacement and Corrected Documents.** If any document material to this loan transaction is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of this loan transaction, upon request by the Government, Borrower will comply with the Government's request to execute, acknowledge, initial and deliver to the Government any and all documentation the Government deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s).

33. **Additional Documents.** Borrower shall, upon request by the Government, execute, acknowledge and deliver to the Government any and all additional documents, instruments and further assurances as may be necessary or proper in the Government's opinion, to effect the intent of this loan transaction or to provide the Government with the security required or contemplated for this loan transaction.

34. **Subrogation.** If any of the proceeds of the note or advances made under the note or this instrument are used to take up outstanding liens against all or any part of the property, the Government shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by the Government by assignment or are released by the holder thereof upon payment.

35. **Riders to this Instrument.** If one or more riders are executed by Borrower and recorded together with this instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument as if the riders were a part of this instrument. [Check applicable boxes]

☒ Extension of Lien Rider ☐ Refinancing Rider ☐ Other(s) [specify] _____

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)   _____ (SEAL)
CARL PHILLIP SMITH

_____ (SEAL)   _____ (SEAL)

ACKNOWLEDGMENTS

(Individual)

STATE OF OKLAHOMA   }
COUNTY OF GARFIELD  } ss.

On this 26TH day of MAY, 2006 , before me personally appeared CARL P. SMITH, A SINGLE PERSON

_____ , to be known to be the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

_____

DORIS E. MERCER
NOTARY PUBLIC
#00014789
EXP. 09-16-09
IN AND FOR
STATE OF OKLA.
GARFIELD COUNTY

_____

*Note: Page 5 of 5 applies to entities only and will not be recorded for individuals.*

FSA 1927-1 OK (10-07-02) *Page 4 of 5*

BOOK 573 PAGE 760

## EXHIBIT "A"

(Incorporated herewith to Mortgage dated 05-26-2006)

**MORTGAGOR:**

SMITH, Carl Phillip, a single person

**LEGAL DESCRIPTION(S):**

Tract 1:

The West Half (W/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25), Range Three (3), West of the Indian Meridian, also known as the West Half (W/2) of Lots Three (3), and Four (4) and the East Half (E/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North, Range Three (3), West of the Indian Meridian, Grant County, Oklahoma.

Initial _CS_   date _05-26-2006_

BOOK 573 PAGE 761

FSA 1927-1A OK
(10-07-02)

## EXTENSION OF LIEN RIDER

THIS EXTENSION OF LIEN RIDER is made this __26th__ day of _____May_____, 2006  and is incorporated by reference into and shall be deemed to amend and supplement the Mortgage ("instrument") of the same date given by the undersigned ("Borrower") to secure payment of the Note described in said instrument, to the United States of America acting through the Farm Service Agency, United States Department of Agriculture ("Government") of the same date and covering the Property described in the instrument.

In addition to the covenants and agreements made in the instrument, Borrower and the Government further covenant and agree as follows:

1.  When the final due date on an existing Note or Notes is extended, this mortgage is a continuation of a lien created under a prior mortgage or mortgages upon said Property, being identified as follows:

| DATED | RECORDED | BOOK | PAGE | IN THE OFFICE OF THE COUNTY CLERK OF |
|-------|----------|------|------|--------------------------------------|
| 12-20-1982 | 02-10-1983 | 358 | 99 | Grant County, Oklahoma |
| 04-10-1996 | 04-12-1996 | 497 | 795 | Grant County, Oklahoma |
| 01-16-2001 | 01-18-2001 | 532 | 265 | Grant County, Oklahoma |
| 05-15-2002 | 05-21-2002 | 542 | 560 | Grant County, Oklahoma |

2.  It is the intent of the parties to this instrument that the Note or Notes described in this instrument is (are) further evidence of the debt described in the prior mortgage or debt secured by that mortgage or mortgages.

3.  The prior mortgage will not be released until the debt secured by said mortgage is fully satisfied.

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Extension of Lien Rider.

CARL PHILLIP SMITH

**EXHIBIT 11**

BOOK **573** PAGE **756**

State of Oklahoma, County of Grant, SS
Filed for record __June 30__ 20__ at__
Recorded in Book _____ 573 Page 756
Debbie Kretchmar _____ Deputy
County Clerk

FILE & RETURN TO:
FARM LOAN PROGRAMS TEAM
ENID SERVICE CENTER
GARFIELD COUNTY FSA OFFICE
1216 W WILLOW RD STE C
ENID OK 73703-2532

Position 5

**UNITED STATES DEPARTMENT OF AGRICULTURE**
Farm Service Agency

**MORTGAGE FOR OKLAHOMA**

THIS MORTGAGE ("instrument") is made on MAY 26 , 20 06 . The mortgagor is

CARL PHILLIP SMITH aka Carl P. Smith, Carl Smith, a single person

("Borrower") whose mailing address is RR 1 BOX 77 : HUNTER OKLAHOMA 74640

. This instrument is given to the United States of America, acting

through the Farm Service Agency, United States Department of Agriculture ("Government") located at

1216 WEST WILLOW ROAD, SUITE C : ENID OKLAHOMA 73703-2536

This instrument secures the following promissory notes, assumption agreements, and/or shared appreciation agreements (collectively called "note"), which have been executed or assumed by the Borrower unless otherwise noted, are payable to the Government, and authorize acceleration of the entire debt upon any default:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| 05-26-2006 | $12,000.00 | 04.2500% | 05-26-2031 |
| 05-15-2002 | $10,617.06 | 04.7500% | 05-15-2017 |
| 05-15-2002 | $117,487.53 | 03.0000% | 05-15-2019 |
| 05- | $30,064.91 | 05.0000% | 05-15-2022 |

RE. MTG TAX $ Exempt DATED 6-30-06

CERT. FEES $ 5.00 REC. # 3107

Waine Webster Elaine Webster, Co. Treas.

_____ Deputy

(The interest rate for any limited resource farm ownership or limited resource operating loans secured by this instrument may be increased as provided in Government regulations and the note.)

By execution of this instrument, Borrower acknowledges receipt of all of the proceeds of the loan or loans evidenced by the above note.

This instrument secures to the Government: (1) payment of the note and all extensions, renewals, and modifications thereof; (2) recapture of any amount due under any Shared Appreciation Agreement entered into pursuant to 7 U. S. C. § 2001; (3) payment of all advances and expenditures, with interest, made by the Government, and (4) the obligations and covenants of Borrower set forth in this instrument, the note, and any other loan agreements.

In consideration of any loan made by the Government pursuant to the Consolidated Farm and Rural Development Act, 7 U. S. C. § 1921 et seq. as evidenced by the note, Borrower irrevocably mortgages, grants and conveys to the Government the following described property situated in the State of Oklahoma, County or Counties of GRANT :

See attached Exhibit A for legal description.

together with all rights (including the rights to mining products, gravel, oil, gas, coal or other minerals), interests, easements, fixtures, hereditaments, appurtenances, and improvements now or later attached thereto, the rents, issues and profits thereof, revenues and income therefrom, all water, water rights, and water stock pertaining thereto, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, or condemnation of any part thereof or interest therein (collectively called "the property"). This instrument constitutes a security agreement and financing statement under the Uniform Commercial Code and creates a security interest in all items which may be deemed to be personal property, including but not limited to proceeds and accessions, that are now or hereafter included in, affixed, or attached to "the property."

Borrower COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the property and that the property is unencumbered, except for encumbrances of record. Borrower warrants and will defend the title to the property against all claims and demands, subject to any encumbrances of record.

This instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform mortgage covering real property.

Initial _CS_ date _05-26-2006_

BOOK 573 PAGE 757

UNIFORM COVENANTS. Borrower COVENANTS AND AGREES as follows:

1. **Payment.** Borrower shall pay promptly when due any indebtedness to the Government secured by this instrument.

2. **Fees.** Borrower shall pay to the Government such fees and other charges that may now or later be required by Government regulations.

3. **Application of payments.** Unless applicable law or Government's regulations provide otherwise, all payments received by Government shall be applied in the following order of priority: (a) to advances made under this instrument; (b) to accrued interest due under the note; (c) to principal due under the note; (d) to late charges and other fees and charges.

4. **Taxes, liens, etc.** Borrower shall pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attaching to or assessed against the property and promptly deliver to the Government without demand receipts evidencing such payments.

5. **Assignment.** Borrower grants and assigns as additional security all the right, title and interest in: (a) the proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or taking by eminent domain or otherwise of any part of the property, or for conveyance in lieu of condemnation; (b) all bonuses, rentals, royalties, damages, delay rentals and income that may be due or become due and payable to the Borrower or Borrower's assigns under any existing or future oil, gas, mining or mineral lease covering any portion of the property; and (c) all rents, issues, profits, income and receipts from the property and from all existing or future leases, subleases, licenses, guaranties and any other agreements for the use and occupancy of any portion of the property, including any extensions, renewals, modifications or substitutions of such agreements. Borrower warrants the validity and enforceability of this assignment.

Borrower authorizes and directs payment of such money to the Government until the debt secured by this instrument is paid in full. Such money may, at the option of the Government, be applied on the debt whether due or not. The Government shall not be obligated to collect such money, but shall be responsible only for amounts received by the Government. In the event any item so assigned is determined to be personal property, this instrument will also be regarded as a security agreement.

Borrower will promptly provide the Government with copies of all existing and future leases. Borrower warrants that as of the date of executing this instrument no default exists under existing leases. Borrower agrees to maintain, and to require the tenants to comply with, the leases and any applicable law. Borrower will obtain the Government's written authorization before Borrower consents to sublet, modify, cancel, or otherwise alter the leases, or to assign, compromise, or encumber the leases or any future rents. Borrower will hold the Government harmless and indemnify the Government for any and all liability, loss or damage that the Government may incur as a consequence of this assignment.

6. **Insurance.** Borrower shall keep the property insured as required by and under insurance policies approved by the Government and, at its request, deliver such policies to the Government. If property is located in a designated flood hazard area, Borrower also shall keep property insured as required by 42 U. S. C. § 4001 et seq. and Government regulations. All insurance policies and renewals shall include a standard mortgagee clause.

7. **Advances by Government.** The Government may at any time pay any other amounts required by this instrument to be paid by Borrower and not paid by Borrower when due, as well as any cost for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. Advances shall include, but not be limited to, advances for payments of real property taxes, special assessments, prior liens, hazard insurance premiums, and costs of repair, maintenance, and improvements. All such advances shall bear interest at the same rate as the note which has the highest interest rate. All such advances, with interest, shall be immediately due and payable by Borrower to the Government without demand. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any secured debt to the Government, in any order the Government determines.

8. **Protection of lien.** Borrower shall pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and its priority and the enforcement or compliance with this instrument and the note. Such expenses include, but are not limited to: costs of evidence of title to, and survey of, the property, costs of recording this and other instruments; attorneys' fees; trustees' fees; court costs; and expenses of advertising, selling, and conveying the property.

9. **Authorized purposes.** Borrower shall use the loan evidenced by the note solely for purposes authorized by the Government.

10. **Repair and operation of property.** Borrower shall: (a) maintain improvements in good repair; (b) make repairs required by the Government; (c) comply with all farm conservation practices and farm management plans required by the Government, and (d) operate the property in a good and husbandlike manner. Borrower shall not (e) abandon the property; (f) cause or permit waste, lessening or impairment of the property; or (g) cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals without the written consent of the Government, except as necessary for ordinary domestic purposes.

11. **Legal compliance.** Borrower shall comply with all laws, ordinances, and regulations affecting the property.

12. **Transfer or encumbrance of property.** Except as provided by Government regulations, the Borrower shall not lease, assign, sell, transfer, or encumber, voluntarily or otherwise, any of the property without the written consent of the Government. The Government may grant consents, partial releases, subordinations, and satisfactions in accordance with Government regulations.

13. **Inspection.** At all reasonable times the Government may inspect the property to ascertain whether the covenants and agreements contained in this instrument are being performed.

14. **Hazardous substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any hazardous substances on or in the property. The preceding sentence shall not apply to the presence, use, or storage on the property of small quantities of hazardous substances that are generally recognized to be appropriate to normal use and maintenance of the property. Borrower covenants that Borrower has made full disclosure of any such known, existing hazardous conditions affecting the property. Borrower shall not do, nor allow anyone else to do, anything affecting the property that is in violation of any federal, state, or local environmental law or regulation. Borrower shall promptly give the Government written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the property and any hazardous substance or environmental law or regulation of which Borrower has actual knowledge.

Initial _CS_   date _05-26-2006_                                    FSA 1927-1 OK (10-07-02`

BOOK 573 PAGE 758

If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any hazardous substance affecting the property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with applicable environmental law and regulations. As used in this paragraph, "hazardous substances" are those substances defined as toxic or hazardous substances by environmental law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph, "environmental law" means Federal laws and regulations and laws and regulations of the jurisdiction where the property is located that relate to health, safety or environmental protection.

15. **Adjustment; release; waiver; forbearance.** In accordance with Government regulations, the Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on the note, (d) release any party who is liable under the note from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all of this can and will be done without affecting the lien or the priority of this instrument or Borrower's liability to the Government for payment of the note secured by this instrument unless the Government provides otherwise in writing. HOWEVER, any forbearance by the Government - whether once or often - in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

16. **Graduation.** If the Government determines that Borrower may be able to obtain a loan from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such a loan in sufficient amount to pay the note secured by this instrument and to pay for stock necessary to be purchased in a cooperative lending agency in connection with such loan.

17. **Forfeiture.** Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in the Government's good faith judgment could result in forfeiture of the property or otherwise materially impair the lien created by this instrument or the Government's security interest. Borrower may cure such default by causing the action or proceeding to be dismissed with a ruling that precludes forfeiture of the Borrower's interest in the property or other material impairment of the lien created by this security instrument or the Government's security interest.

18. **False statement.** Borrower also shall be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to the Government (or failed to provide the Government with any material information) in connection with the loan evidenced by the note.

19. **Cross Collateralization.** Default under this instrument shall constitute default under any other security instrument held by the Government and executed or assumed by Borrower. Default under any other such security instrument shall constitute default under this instrument.

20. **Highly erodible land; wetlands.** Any loan secured by this instrument will be in default if Borrower uses any loan proceeds for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as provided in 7 C.F.R. part 1940, subpart G, or any successor Government regulation.

21. **Non-discrimination.** If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, disability, familial status or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, disability, familial status or age.

22. **Notices.** Notices given under this instrument shall be sent by certified mail unless otherwise required by law. Such notices shall be addressed, unless and until some other address is designated in a notice, in the case of the Government to the State Executive Director of the Farm Service Agency at the mailing address shown above, and in the case of Borrower at the address shown in the Government's Finance Office records (which normally will be the same as the mailing address shown above).

23. **Governing law; severability.** This instrument shall be governed by Federal law. If any provision of this instrument or the note or its application to any person or circumstances is held invalid, such invalidity shall not affect other provisions or applications of this instrument or the note which can be given effect without the invalid provision or application. The provisions of this instrument are severable. This instrument shall be subject to the present regulations of the Government, and to its future regulations not inconsistent with the express provisions hereof. All powers and agencies granted in this instrument are coupled with an interest and are irrevocable by death or otherwise, and the rights and remedies provided in this instrument are cumulative to remedies provided by law.

24. **Successors and assigns; joint and several covenants.** The covenants and agreements of this instrument shall bind and benefit the successors and assigns of Government and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this instrument but does not execute the Note: (a) is co-signing this instrument only to mortgage, grant and convey that Borrower's interest in the property under this instrument; (b) is not personally obligated to pay the sums secured by this instrument; and (c) agrees that the Government and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this instrument or the note without that Borrower's consent.

25. **No merger.** If this instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the property, the leasehold and the fee title shall not merge unless the Government agrees to the merger in writing. If the property is conveyed to the Government, title shall not merge (unless the Government elects otherwise) and the lien provided under this instrument shall not be affected by such conveyance.

26. **Time is of the essence.** Time is of the essence in the Borrower's performance of all duties and obligations under this instrument

Initial _QS_   date 05-26-2006                                                          FSA 1927-1 OK (10-07-02)

BOOK 573 PAGE 759

NON-UNIFORM COVENANTS. Borrower further COVENANTS AND AGREES as follows:

27. **Default; Government's Remedies upon Default.** Default occurs under this instrument if Borrower breaches any covenant, obligation or agreement contained in this instrument or in the note secured by this instrument. Upon default, the Government shall give notice of the default to Borrower prior to acceleration if required by applicable law. If the default is not cured, the Government, at its option, may: (a) accelerate the maturity of the note and declare immediately due and payable the entire amount unpaid under the note and any other indebtedness which is secured by this instrument; (b) for the account of Borrower, incur and pay reasonable expenses for the repair and maintenance of and take possession of, operate or rent the property; (c) upon application by it and production of this instrument, without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases; (d) foreclose this instrument and sell the property in accordance with the remedies provided in this instrument and under applicable federal or state law; and (e) enforce any and all other rights and remedies provided herein or by present or future law. Proceeding under this instrument, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

28. **Application of foreclosure proceeds.** The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with this instrument, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all other debt to the Government secured by this instrument, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other debt of Borrower to the Government and (f) any balance to Borrower. If the Government is the successful bidder at foreclosure or other sale of all or any part of the property, the Government may pay its share of the purchase price by crediting such amount on any debts of Borrower owing to the Government, in the order prescribed above.

29. **Waiver.** Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of any action for a deficiency judgment or limiting the amount thereof or the time within which such action must be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession following any foreclosure sale, or (e) limiting the conditions which the Government may by regulation impose, including the interest it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State laws.

30. **Collection of Assigned Monies.** Borrower agrees that the Government has the immediate right to collect and receive any and all monies covered under the assignment provided in paragraph 5 of this instrument. In the event that Borrower receives such monies directly, Borrower will immediately deliver such monies to Government with any necessary endorsements.

31. **Entitlement to Abstracts.** In the event that this mortgage is foreclosed or if the property is conveyed by Borrower to Government, Government shall be entitled to all abstracts and other evidences of title pertaining to the property. Upon demand by Government, Borrower agrees to immediately deliver such abstracts and other evidences of title to Government. The definition of "property" herein is amended to include such abstracts and other evidences of title.

32. **Replacement and Corrected Documents.** If any document material to this loan transaction is lost, misplaced, misstated or inaccurately reflects the true and correct terms and conditions of this loan transaction, upon request by the Government, Borrower will comply with the Government's request to execute, acknowledge, initial and deliver to the Government any and all documentation the Government deems necessary to replace or correct the lost, misplaced, misstated or inaccurate document(s).

33. **Additional Documents.** Borrower shall, upon request by the Government, execute, acknowledge and deliver to the Government any and all additional documents, instruments and further assurances as may be necessary or proper in the Government's opinion, to effect the intent of this loan transaction or to provide the Government with the security required or contemplated for this loan transaction.

34. **Subrogation.** If any of the proceeds of the note or advances made under the note or this instrument are used to take up outstanding liens against all or any part of the property, the Government shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by the Government by assignment or are released by the holder thereof upon payment.

35. **Riders to this Instrument.** If one or more riders are executed by Borrower and recorded together with this instrument, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this instrument as if the riders were a part of this instrument. [Check applicable boxes]

☒ Extension of Lien Rider      ☐ Refinancing Rider      ☐ Other(s) [specify] _____

By signing below, Borrower accepts and agrees to the terms and covenants contained in this instrument and in any rider executed by Borrower and recorded with this instrument.

_____ (SEAL)                    _____ (SEAL)
CARL PHILLIP SMITH

_____ (SEAL)                    _____ (SEAL)

ACKNOWLEDGMENTS
(Individual)

STATE OF OKLAHOMA      }
COUNTY OF GARFIELD     } ss.

On this 26TH day of MAY, 2006 _____, before me personally appeared CARL P. SMITH, A SINGLE PERSON

_____, to be known (prove to me) the same person(s) whose name is subscribed to the foregoing instrument, and acknowledged that (he or she) signed and delivered the instrument as (his or her) free and voluntary act, for the uses and purposes set forth.

My commission expires:

_____                    Doris E. Mercer
                                           DORIS E. MERCER
                                           NOTARY PUBLIC

*Note: Page 5 of 5 applies to entities only and will not be recorded for individuals.*      FSA 1927-1 OK (10-07-02) *Page 4 of 5*

BOOK 573 PAGE 760

## **EXHIBIT "A"**

### (Incorporated herewith to Mortgage dated 05-26-2006)

**MORTGAGOR:**

    SMITH, Carl Phillip, a single person

**LEGAL DESCRIPTION(S):**

    <u>Tract 1:</u>

        The West Half (W/2) of the Southwest Quarter (SW/4) of Section Thirty-one (31),
Township Twenty-five (25), Range Three (3), West of the Indian Meridian, also known
as the West Half (W/2) of Lots Three (3), and Four (4) and the East Half (E/2) of the
Southwest Quarter (SW/4) of Section Thirty-one (31), Township Twenty-five (25) North,
Range Three (3), West of the Indian Meridian, Grant County, Oklahoma.

Initial _C S_   date _05-26-2006_

BOOK 573 PAGE 761

FSA 1927-1A OK
(10-07-02)

## EXTENSION OF LIEN RIDER

THIS EXTENSION OF LIEN RIDER is made this __26th__ day of _____May_____, 2006  and is incorporated by reference into and shall be deemed to amend and supplement the Mortgage ("instrument") of the same date given by the undersigned ("Borrower") to secure payment of the Note described in said instrument, to the United States of America acting through the Farm Service Agency, United States Department of Agriculture ("Government") of the same date and covering the Property described in the instrument.

In addition to the covenants and agreements made in the instrument, Borrower and the Government further covenant and agree as follows:

1.  When the final due date on an existing Note or Notes is extended, this mortgage is a continuation of a lien created under a prior mortgage or mortgages upon said Property, being identified as follows:

| DATED | RECORDED | BOOK | PAGE | IN THE OFFICE OF THE COUNTY CLERK OF |
|-------|----------|------|------|----------------------------------------|
| 12-20-1982 | 02-10-1983 | 358 | 99 | Grant County, Oklahoma |
| 04-10-1996 | 04-12-1996 | 497 | 795 | Grant County, Oklahoma |
| 01-16-2001 | 01-18-2001 | 532 | 265 | Grant County, Oklahoma |
| 05-15-2002 | 05-21-2002 | 542 | 560 | Grant County, Oklahoma |

2.  It is the intent of the parties to this instrument that the Note or Notes described in this instrument is (are) further evidence of the debt described in the prior mortgage or debt secured by that mortgage or mortgages.

3.  The prior mortgage will not be released until the debt secured by said mortgage is fully satisfied.

By signing below, Borrower accepts and agrees to the terms and provisions contained in this Extension of Lien Rider.

CARL PHILLIP SMITH

Form FmHA 1940-17
(11-1-78)

UNITED STATES DEPARTMENT OF AGRICULTURE
FARMERS HOME ADMINISTRATION

*Reamortized, Not Paid*

PROMISSORY NOTE

| KIND OF LOAN |
| --- |
| Type: **F O - Limited** |
| Pursuant to: |
| ☒ Consolidated Farm & Rural Development Act |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 |

| Name | | |
| --- | --- | --- |
| SMITH, Carl P., a single person | | |
| State OKLAHOMA | County Garfield | |
| Case No. 42-24-▓▓▓ | Date May 16, 1979 | |

| ACTION REQUIRING NOTE | |
| --- | --- |
| ☒ Inital loan | ☐ Rescheduling |
| ☐ Subsequent loan | ☐ Reamortization |
| ☐ Consolidation & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☐ Deferred payments |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____ Enid, Oklahoma _____

_____, or at such other place as the Government may hereafter designate in writing, the principal sum of

ONE HUNDRED THIRTY-FIVE THOUSAND FIVE HUNDRED AND NO/100 ----------------------- dollars

($ 135,500.00 _____ ), plus interest on the unpaid principal balance at the **RATE** of

THREE _____ percent ( _____ 3 %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in _____ 41 installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
| --- | --- | --- | --- |
| $ 2,562.00 | on January 1, 19 80 ; | $ _____ | on January 1, 19 ___ ; |
| $ 5,862.00 | on January 1, 19 81 ; | $ _____ | on January 1, 19 ___ ; |
| $ _____ | on January 1, 19 ___ ; | $ _____ | on January 1, 19 ___ ; |
| $ _____ | on January 1, 19 ___ ; | $ _____ | on January 1, 19 ___ ; |
| $ _____ | on January 1, 19 ___ ; | $ _____ | on January 1, 19 ___ ; |

and $ 5,862.00 _____ thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and

payable _____ 40 years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT**: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

**DEFAULT**: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and not.          hereby waived.

Restructured, Not Paid

Carl P. Smith

_____   *(Borrower)*
Carl P. Smith

_____   *(Borrower)*

Rural Route #1

Hunter, Oklahoma  74640

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $135,500.00 | 5-16-1979 | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

Form FmHA 1940-17
(11-1-78)

| | KIND OF LOAN |
|---|---|
| UNITED STATES DEPARTMENT OF AGRICULTURE<br>FARMERS HOME ADMINISTRATION<br><br>PROMISSORY NOTE | Type: __LR-FO__<br>Pursuant to:<br>☒ Consolidated Farm & Rural Development Act<br>☐ Emergency Agricultural Credit Adjustment<br>Act of 1978 |

*Reamortized, Not Paid*

| Name<br>CARL P. SMITH | | ACTION REQUIRING NOTE |
|---|---|---|
| State<br>OKLAHOMA | County<br>GARFIELD | ☐ Inital loan      ☐ Rescheduling<br>☒ Subsequent loan  ☐ Reamortization |
| Case No.<br>42-24-▇▇▇▇ | Date<br>December 20, 1982 | ☐ Consolidation &   ☐ Credit sale<br>   subsequent loan  ☐ Deferred payments<br>☐ Consolidation |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in __Enid, OKLAHOMA__

_____, or at such other place as the Government may hereafter designate in writing, the principal sum of

__SIXTY-SEVEN THOUSAND FIVE HUNDRED SEVENTY AND NO/100----------------------__ dollars

($ __67,570.00__ ), plus interest on the unpaid principal balance at the **RATE** of

__FIVE AND THREE QUARTERS__ percent ( __5.75__ %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in __41__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$ __130.00__ on January 1, 19__83__; $ __4,351.00__ on January 1, 19__84__;
$ __n/a__ on January 1, 19__; $ __n/a__ on January 1, 19__;
$ __n/a__ on January 1, 19__; $ __n/a__ on January 1, 19__;
$ __n/a__ on January 1, 19__; $ __n/a__ on January 1, 19__;
$ __n/a__ on January 1, 19__; $ __n/a__ on January 1, 19__;
and $ __4,351.00__ thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and

payable __40__ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1861.2) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

**DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice      reby waived.

_____          _____
CORENNE SMITH                              CARL P. SMITH                    *(Borrower)*

                    Reamortized, Not Paid   _____
                                                                            *(Borrower)*


                                           RT. 1, HUNTER, OKLAHOMA      7640

                                           _____

                                           _____


| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

**EXHIBIT 14**

USDA-FmHA
Form FmHA-1940-17
(Rev. 6-16-81)

Reamortized, Not Paid

KIND OF LOAN

Type: _____ Fo-LR _____

Pursuant to:
☒ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment Act of 1978

## PROMISSORY NOTE

| Name | |
|------|--|
| SMITH, Carl P. A Single Person | |

| State | County |
|-------|--------|
| OKLAHOMA | GARFIELD |

| Case No. | Date |
|----------|------|
| 42-24- | JULY 30, 1986 |

| Fund Code | Loan No |
|-----------|---------|
| 41 | 04 |

**ACTION REQUIRING NOTE**

☐ Initial loan            ☐ Rescheduling
☐ Subsequent loan         ☒ Reamortization
☐ Consolidation &         ☐ Credit sale
  subsequent loan         ☐ Deferred payments
☐ Consolidation

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____ ENID, OKLAHOMA · 73701 _____

_____, or at such other place as the Government may hereafter designate in writing, the principal sum of

**ONE HUNDRED THIRTY-SEVEN THOUSAND FIVE HUNDRED FIFTY-ONE AND .81/100** _____ dollars

($ 137,551.81 _____ ), plus interest on the unpaid principal balance at the **RATE** of

**FIVE** _____ percent ( 5.00% %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in ____ 33 ____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|--|--|--|--|
| $ 2,921.00 | on January 1, 19 87 ; | $ 8,706.00 | on January 1, 19 88 ; |
| $ na | on January 1, 19 ___ ; | $ na | on January 1, 19 ___ ; |
| $ na | on January 1, 19 ___ ; | $ na | on January 1, 19 ___ ; |
| $ na | on January 1, 19 ___ ; | $ na | on January 1, 19 ___ ; |
| $ na | on January 1, 19 ___ ; | $ na | on January 1, 19 ___ ; |
| $ na | on January 1, 19 ___ ; | $ na | on January 1, 19 ___ ; |

and $ 8,706.00 _____ thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable ___ 32 ___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ 135,500.00 | 3% % | 5-16 , 1979 | CARL P. SMITH | 5-16 , XXX 2019 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT**: If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

**DEFAULT**: Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

Presentment, protest, and notice are .hereby waived.

(SEAL)

_____

CARL P. SMITH                    (Borrower)

(SEAL)

_____

(Borrower)

_____

Route One

_____

Hunter, OK 74640

It is expressly agreed by and between the parties hereto that this promissory note is a reamortization of installments of a loan, which debt is evidenced by a promissory note dated May 16, 1979, in the original principal amount of $135,500.00, plus interest at the rate of 3% per annum. It is the intent of the parties that this note evidences the same debt as evidenced by the former promissory note and does not discharge such debt or the lien of any instrument securing its payment.

_C P S_

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

*Position 2*                    FmHA 1940-17 (Rev. 6-16-81)

EXHIBIT 15

USDA-FmHA
Form FmHA 1940-17
(Rev. 6-16-81)

**PROMISSORY NOTE**

| | |
|---|---|
| KIND | JAN |
| Type: __FO-LR__ | |

Pursuant to:
[X] Consolidated Farm & Rural Development Act
[ ] Emergency Agricultural Credit Adjustment Act of 1978

Name
**SMITH, Carl P. A single person**

State
**OKLAHOMA**

County
**GARFIELD**

Case No.
**42-24-▓▓▓▓▓**

Date
**JULY 30, 1986**

Fund Code
**41**

Loan No
**05**

ACTION REQUIRING NOTE
| | |
|---|---|
| [ ] Initial loan | [ ] Rescheduling |
| [ ] Subsequent loan | [X] Reamortization |
| [ ] Consolidation & subsequent loan | [ ] Credit sale |
| [ ] Consolidation | [ ] Deferred payments |

FOR VALUE RECEIVED, the undersigned Borrower(s) and any comakers jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____ **Enid, Oklahoma  73701** _____

_____, or at such other place as the Government may hereafter designate in writing, the principal sum of

**\*\*SEVENTY-TWO THOUSAND SIX HUNDRED THIRTY-FOUR AND .05/100\*\*** _____ dollars

($ __72,634.05__ ), plus interest on the unpaid principal balance at the **RATE** of

**\*\*FIVE\*\*** _____ percent ( __5.00%__ %) per annum. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in __37__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ __1,543.00__ | on January 1, 19 __87__ ; | $ __4,391.00__ | on January 1, 19 __88__ ; |
| $ __na__ | on January 1, 19 ___ ; | $ __na__ | on January 1, 19 ___ ; |
| $ __na__ | on January 1, 19 ___ ; | $ __na__ | on January 1, 19 ___ ; |
| $ __na__ | on January 1, 19 ___ ; | $ __na__ | on January 1, 19 ___ ; |
| $ __na__ | on January 1, 19 ___ ; | $ __na__ | on January 1, 19 ___ ; |
| $ __na__ | on January 1, 19 ___ ; | $ __na__ | on January 1, 19 ___ ; |

and $ __4,391.00__ thereafter on January 1st of each year until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable __36__ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Records of Advances.

For each rescheduled, reamortized or consolidated note, interest accrued to the date of this instrument shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to interest accrued as of the date of receipt of the payment and then to principal.

Prepayments of scheduled installments, or any portion thereof, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, to be applied to the last installment to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled herein.

If the Government at any time assigns this note and insures the payment thereof, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced hereby, at the option of the Government shall become a part of and bear interest at the same rate as the prinicpal of the debt evidenced hereby and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced hereby shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|
| $ 65,570.00 | 5.75% % | 12/20 , 19 82 | Carl P. Smith | 12-20 , XX 2022 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |
| $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock.

**DEFAULT:** Failure to pay when due any debt evidenced hereby or perform any covenant of agreement hereunder shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default hereunder. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions hereof.

GPO : 1984 O - 447-543

Presentment, protest, and notice are hereby waived.

(SEAL)

_____    _____
CORINNE SMITH,                     CARL P. SMITH            (Borrower)
A co-signore
(SEAL)

_____
                                                           (Borrower)


_____
Route One
_____
Hunter, OK 74640

It is expressly agreed by and between the parties hereto that this promissory note is a reamortization of installments of a loan, which debt is evidenced by a promissory note dated 12-20-82, in the original principal sum of $65,570.00, plus interest at the rate of 5.75% per annum.  It is the intent of the parties that this note evidences the same debt as evidenced by the former promissory note and does not discharge such debt or the lien of any instrument securing its payment.

_____    _____
        C P S                              C P S

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

**EXHIBIT 16**

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

(reamortized)
**PROMISSORY NOTE**

| ... .OAN | | |
|---|---|---|
| Type: FU | ☐ Regular | |
| | ☒ Limited Resource | |
| **Pursuant to:** | | |
| ☒ Consolidated Farm & Rural Development Act | | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | | |

| Name SMITH, CARL P. | | | ACTION REQUIRING NOTE | |
|---|---|---|---|---|
| State OKLAHOMA | County GARFIELD | | ☐ Initial loan | ☐ Rescheduling |
| | | | ☐ Subsequent loan | ☒ Reamortization |
| Case No. 42-24-▓▓▓▓ | Date APRIL 10, 1996 | | ☐ Consolidated & subsequent loan | ☐ Credit sale |
| | | | | ☐ Deferred payments |
| Fund Code 41 | Loan No. 06 | | ☐ Consolidation | ☐ Debt write down |
| | | | ☐ Conservation easement | |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in 302 NORTH INDEPENDENCE, SUITE 910 ENID, OKLAHOMA 73701 , or at such other place as the Government may later designate in writing, the principal sum of >>ONE HUNDRED THIRTY-SEVEN THOUSAND THREE HUNDRED SEVENTY-FIVE AND 69/100<< dollars ($ $137,375.69 ), plus interest on the unpaid principal balance at the **RATE** of >>THREE<< percent ( 3.00 %) per annum and >>NONE<< dollars ($ 0.00 ) of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in TWENTY-TWO (22) installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| $8,621.00 | on 04-10-97 | $8,621.00 | on 04-10-98 |
|---|---|---|---|
| N/A | on | N/A | on |
| N/A | on | N/A | on |
| N/A | on | N/A | on |
| N/A | on | N/A | on |
| N/A | on | N/A | on |

and $ 8,621.00 thereafter on APRIL 10 of each YEAR until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable TWENTY-TWO (22) years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

NOTE:: The United States of America, acting through Farm Service Agency (FSA), formerly known as Consolidated Farm Service Agency, formerly known as Farmers Home Administration.

*Position 2*

FmHA 1940-17 (Rev. 4-92)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|---|
| 41-04 | $137,551.81 | 5.00% % | 07-30 | , 1986 | SMITH, CARL P. | 07-30-2018 XXXX |
| | $ | % | | , 19 | | , 19 |
| | $ | % | | , 19 | | , 19 |
| | $ | % | | , 19 | | , 19 |
| | $ | % | | , 19 | | , 19 |
| | $ | % | | , 19 | | , 19 |
| | $ | % | | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the ''Kind of Loan'' block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

EXHIBIT "A" AND "C" INCORPORATED HEREWITH.

Presentment, protest, and notice are waived.

(SEAL)
AS COSIGNER:

CARL P. SMITH                                    *(Borrower)*

CORINNE SMITH

Route One

Hunter, Oklahoma   74640

**RECORD OF ADVANCES**

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | TOTAL | $ |  |

*U.S. Government Printing Office: 1994 — 555-046/80026

EXHIBIT "A" TO THE PROMISSORY NOTE DATED APRIL 10, 1996

IT IS EXPRESSLY AGREED BY AND BETWEEN THE PARTIES HERETO

THAT THIS PROMISSORY NOTE IS A RESCHEDULING/REAMMORTIZATION

OF INSTALLMENTS OF A LOAN, WHICH DEBT IS EVIDENCED BY A

PROMISSORY NOTE DATED 05-16-1979 IN THE ORIGINAL PRINCIPAL

SUM OF $135,500.00 PLUS INTEREST AT THE RATE OF 03.00%

PER ANNUM.  IT IS THE INTENT OF THE PARTIES THAT THIS

NOTE EVIDENCES THE SAME DEBT AS EVIDENCED BY THE FORMER

PROMISSORY NOTE AND DOES NOT DISCHARGE SUCH DEBT OR THE LIEN

OF ANY INSTRUMENT SECURING ITS PAYMENT.


_____
CARL P. SMITH


AS COSIGNER:


_____
CORINNE SMITH

<u>EXHIBIT "C" TO THE PROMISSORY NOTE DATED APRIL 10,1996</u>

ALL OF THE GOVERNMENT FUNDS EVIDENCED BY THIS NOTE WERE

APPROVED PRIOR TO JUNE 24, 1986.   THEREFORE, THE "HIGHLY

ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT" PROVISION

OF THIS NOTE DOES NOT APPLY.


CARL P. SMITH


AS COSIGNER:


CORINNE SMITH

**EXHIBIT 17**

USDA-FmHA
Form FmHA 1940-17
(Rev. 4-92)

*reamortized*

## PROMISSORY NOTE

KIND ... )AN

Type: ___FO___   ☐ Regular
                 ☒ Limited
                   Resource

Pursuant to:
☒ Consolidated Farm & Rural Development Act
☐ Emergency Agricultural Credit Adjustment
   Act of 1978

| Name | | |
| --- | --- | --- |
| SMITH, CARL P. | | |
| State | County | ACTION REQUIRING NOTE |
| OKLAHOMA | GARFIELD | ☐ Initial loan          ☐ Rescheduling |
| Case No. | Date | ☐ Subsequent loan    ☒ Reamortization |
| 42-24-▓▓▓ | APRIL 10, 1996 | ☐ Consolidated &    ☐ Credit sale |
|  |  |    subsequent loan  ☒ Deferred payments |
| Fund Code | Loan No. | ☐ Consolidation      ☒ Debt write down |
| 41 | 07 | ☐ Conservation |
|  |  |    easement |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture,

(herein called the "Government"), or its assigns, at its office in __302 NORTH INDEPENDENCE, SUITE 910:__

__ENID, OKLAHOMA  73701__, or at such other place as the Government may later designate in writing, the principal sum of

>>TWENTY-FOUR THOUSAND TWO HUNDRED TWELVE AND .41/100<< _____ dollars

($ __24,212.41__ _____ ), plus interest on the unpaid principal balance at the **RATE** of

>>FIVE<< _____ percent ( __5.00%__ %) per annum and

>>NONE<< _____ dollars ($ __0.00__ _____ ) of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farmers Home Administration, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farmers Home Administration for the type of loan indicated above.

Principal and interest shall be paid in __TWENTY-SIX (26)__ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | | | |
| --- | --- | --- | --- | --- | --- |
| $ __292.00__ | on __04-10-97__ | ; | $ __292.00__ | on __04-10-98__ | ; |
| $ __292.00__ | on __04-10-99__ | ; | $ __292.00__ | on __04-10-00__ | ; |
| $ __292.00__ | on __04-10-01__ | ; | $ __2,093.00__ | on __04-10-02__ | ; |
| $ __N/A__ | on _____ | ; | $ __N/A__ | on _____ | ; |
| $ __N/A__ | on _____ | ; | $ __N/A__ | on _____ | ; |
| $ __N/A__ | on _____ | ; | $ __N/A__ | on _____ | ; |

and $ __2,093.00__ _____ thereafter on __APRIL 10__ of each __YEAR__ until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable __TWENTY-SIX (26)__ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorizes the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*(left margin, vertical text)* the United States, acting through Farm Service Agency (USDA), formerly known as Consolidated Farm Service Agency, formerly known as Farmers Home Administration.

*Position 2*

FmHA 1940-17 (Rev. 4-92)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR §1951.8) of the Farmers Home Administration according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s)(new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INT. RATE | DATE | ORIGINAL BORROWER | LAST INSTALL. DUE |
|---|---|---|---|---|---|
| 41-05 | $$72,634.05 | 5.00% % | 07-30 , 19 86 | SMITH, CARL P. | 07-30-2022 XXXXX |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |
| | $ | % | , 19 | | , 19 |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a nonprogram loan.

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Soil Conservation Service (SCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the SCS or the appropriate conservation district in accordance with SCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by SCS or the appropriate conservation district in accordance with SCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT,** the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farmers Home Administration and to its future regulations not inconsistent with the express provisions of this note.

EXHIBIT "A", "B" AND "C" INCORPORATED HEREWITH.

Presentment, protest, and notice are waived.

(SEAL):
AS COSIGNER:

CORINNE SMITH

_____
CARL P. SMITH                    *(Borrower)*

Route One

Hunter, Oklahoma   74640

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

*U.S. Government Printing Office: 1994 — 656-049/80026

<u>EXHIBIT "A" TO THE PROMISSORY NOTE DATED APRIL 10, 1996</u>

IT IS EXPRESSLY AGREED BY AND BETWEEN THE PARTIES HERETO

THAT THIS PROMISSORY NOTE IS A RESCHEDULING/REAMMORTIZATION

OF INSTALLMENTS OF A LOAN, WHICH DEBT IS EVIDENCED BY A

PROMISSORY NOTE DATED 12-20-1982 IN THE ORIGINAL PRINCIPAL

SUM OF $67,570.00 PLUS INTEREST AT THE RATE OF 05.75%

PER ANNUM.  IT IS THE INTENT OF THE PARTIES THAT THIS

NOTE EVIDENCES THE SAME DEBT AS EVIDENCED BY THE FORMER

PROMISSORY NOTE AND DOES NOT DISCHARGE SUCH DEBT OR THE LIEN

OF ANY INSTRUMENT SECURING ITS PAYMENT.


_____
CARL P. SMITH


AS COSIGNER:

_____
CORINNE SMITH

EXHIBIT "B" TO THE PROMISSORY NOTE DATED APRIL 10, 1996

ADDENDUM FOR DEFERRED INTEREST

Addendum to promissory note dated April 10, 1996 in the
original amount of $24,212.41 at an annual interest rate of
05.00 percent.  This agreement amends and attaches to the
above note. $239.00 of each regular payment on the note
will be applied to the interest which accrued during the
deferral period.  The remainder of the regular payment will
be applied in accordance with 7 CFR Part 1951, Subpart A.  I
agree to sign a supplementary payment agreement and make
additional payments if during the deferral point I have a
substantial increase in income and repayment ability.


_____
CARL P. SMITH


AS COSIGNER:

_____
CORINNE SMITH

EXHIBIT "C" TO THE PROMISSORY NOTE DATED APRIL 10,1996

ALL OF THE GOVERNMENT FUNDS EVIDENCED BY THIS NOTE WERE

APPROVED PRIOR TO JUNE 24, 1986.   THEREFORE, THE "HIGHLY

ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT" PROVISION

OF THIS NOTE DOES NOT APPLY.


_____
CARL P. SMITH


AS COSIGNER:


_____
CORINNE SMITH

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

### PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: **FO** | ☐ Regular | |
| | ☒ Limited Resource | |
| Pursuant to: | | |
| ☒ Consolidated Farm & Rural Development Act | | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | | |

| 1. Name |
|---|
| SMITH, CARL PHILLIP |

| 2. State | 3. County |
|---|---|
| OKLAHOMA | GARFIELD |

| 4. Case Number | 5. Date |
|---|---|
| 42-24-4███ | MAY 15, 2002 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | 11 |

**9. ACTION REQUIRING NOTE**

| ☐ Initial loan | ☐ Rescheduling |
|---|---|
| ☐ Subsequent loan | ☒ Reamortization |
| ☐ Consolidated & subsequent loan | ☐ Credit sale |
| ☐ Consolidation | ☒ Deferred payments |
| ☐ Conservation easement | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____1216 WEST WILLOW, SUITE C : ENID OKLAHOMA 73703_____

_____, or at such other place as the Government may later designate in writing, the principal sum of

ONE HUNDRED SEVENTEEN THOUSAND FOUR HUNDRED EIGHTY-SEVEN AND .53/100 _____ dollars

($_____ $117,487.53 _____), plus interest on the unpaid principal balance at the **RATE** of

THREE _____ percent ( 3.00% %) per annum and

NONE _____ dollars ($_____ $0.00 _____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in _____SEVENTEEN (17)_____ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ $5,782.00 on MAY 15, 2003 | ; $ $9,155.00 on MAY 15, 2004 | ; |
| $ $9,155.00 on MAY 15, 2005 | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |

and $ $9,155.00 thereafter on MAY 15 of each YEAR until the principal and interest are fully paid except that the final installment of the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable SEVENTEEN (17) years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                    Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-06 | $  $137,375.69 | 3.00% | 04-10-1996 | SMITH, CARL P. | 04-10-2018 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

FSA-1940-17 (10-26-99)

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

EXHIBIT "A", "B" AND "C" INCORPORATED HEREWTIH.

Presentment, protest, and notice are waived.

(SEAL)

CARL PHILLIP SMITH

(Borrower)

AS COSIGNER:

CORINNE SMITH

RR 1 BOX 77

HUNTER   OK   74640

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | TOTAL | $ | |

## EXHIBIT "A"

ADDENDUM TO THE PROMISSORY NOTE DATED MAY 15, 2002

IT IS EXPRESSLY AGREED BY AND BETWEEN THE PARTIES HERETO THAT THIS
PROMISSORY NOTE IS A RESCHEDULING OR REMMORTIZATION OF
INSTALLMENTS OF A LOAN, WHICH DEBT IS EVIDENCED BY A PROMISSORY NOTE
DATED 05-16-1979 IN THE ORIGINAL PRINCIPAL SUM OF $135,500.00 PLUS
INTEREST AT THE RATE OF 03.00% PER ANNUM.  IT IS THE INTENT OF THE
PARTIES THAT THIS NOTE EVIDENCES THE SAME DEBT AS EVIDENCED BY THE
FORMER PROMISSORY NOTE AND DOES NOT DISCHARGE SUCH DEBT OR THE
LIEN OF ANY INSTRUMENT SECURING ITS PAYMENT.


CARL PHILLIP SMITH


AS COSIGNER:


CORINNE SMITH

**EXHIBIT "B"**

ADDENDUM FOR DEFERRED INTEREST

Addendum to promissory note dated May 15, 2002 in the original amount of $117,487.53 at an annual interest rate of 3.00 percent.  This agreement amends and attaches to the above note. $78.00 of each regular payment on the note will be applied to the interest which accrued during the deferral period.  The remainder of the regular payment will be applied in accordance with 7 CFR Part 1951, Subpart A.  I agree to sign a supplementary payment agreement and make additional payments if during the deferral point I have a substantial increase in income and repayment ability.

CARL PHILLIP SMITH

AS COSIGNER:

CORINNE SMITH

## EXHIBIT "C"

ADDENDUM TO PROMISSORY NOTE DATED MAY 15, 2002.

ALL OF THE GOVERNMENT FUNDS EVIDENCED BY THIS NOTE WERE APPROVED PRIOR TO JUNE 24, 1986.  THEREFORE, THE "HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT" PROVISION OF THIS NOTE DOES NOT APPLY.

_____
CARL PHILLIP SMITH

AS COSIGNER:

_____
CORINNE SMITH



**REPRODUCE LOCALLY.** Include form number and date on all reproductions.

FSA-1940-17
(10-26-99)

U.S. DEPARTMENT OF AGRICULTURE
Farm Service Agency

## PROMISSORY NOTE

| 8. KIND OF LOAN | | |
|---|---|---|
| Type: __FO__ | | ☐ Regular |
| | | ☒ Limited Resource |
| Pursuant to: | | |
| ☒ Consolidated Farm & Rural Development Act | | |
| ☐ Emergency Agricultural Credit Adjustment Act of 1978 | | |

| 1. Name |
|---|
| SMITH, CARL PHILLIP |

| 2. State | 3. County |
|---|---|
| OKLAHOMA | GARFIELD |

| 4. Case Number | 5. Date |
|---|---|
| 42-24-▮▮▮▮ | MAY 15, 2002 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | 12 |

| 9. ACTION REQUIRING NOTE | | | |
|---|---|---|---|
| ☐ Initial loan | | ☐ Rescheduling |
| ☐ Subsequent loan | | ☒ Reamortization |
| ☐ Consolidated & subsequent loan | | ☐ Credit sale |
| ☐ Consolidation | | ☒ Deferred payments |
| ☐ Conservation easement | | ☐ Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in _____1216 WEST WILLOW, SUITE C : ENID OKLAHOMA 73703_____

_____ , or at such other place as the Government may later designate in writing, the principal sum of

THIRTY THOUSAND SIXTY-FOUR AND .91/100 _____ dollars

($____$30,064.91____ ), plus interest on the unpaid principal balance at the **RATE** of

FIVE _____percent ( __5.00%__ %) per annum and

NONE _____dollars ($_____$0.00_____ )

of Noncapitalized interest. If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address. The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in ___TWENTY (20)___ installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

$_____$0.00__ on __MAY 15, 2003__ ; $_____$2,567.00__ on ___MAY 15, 2004___ ;

$_____$2,567.00__ on __MAY 15, 2005__ ; $_____N/A__ on N/A _____ ;

$_____N/A__ on N/A ; $_____N/A__ on N/A _____ ;

$_____N/A__ on N/A ; $_____N/A__ on N/A _____ ;

$_____N/A__ on N/A ; $_____N/A__ on N/A _____ ;

$_____N/A__ on N/A ; $_____N/A__ on N/A _____ ;

and $_____$2,567.00__ thereafter on __MAY 15__ of each__YEAR__until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable ___TWENTY (20)___ years from the date of this note, and except that prepayments may be made as provided below. The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government. Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government. Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note. Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-07 | $  $24,212.41 | 5.00% | 04-10-1996 | SMITH, CARL P. | 04-10-2022 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.

**FSA-1940-17** (10-26-99)

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements. Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above. This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

EXHIBIT "A", "B" AND "C" INCORPORATED HEREWTIH.

Presentment, protest, and notice are waived.

(SEAL)

CARL PHILLIP SMITH             *(Borrower)*

AS COSIGNER:

RR 1 BOX 77

HUNTER    OK   74640

CORINNE SMITH

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
| $ |  | $ |  | $ |  |
|  |  |  | **TOTAL** | $ |  |

## EXHIBIT "A"

### ADDENDUM TO THE PROMISSORY NOTE DATED MAY 15, 2002

IT IS EXPRESSLY AGREED BY AND BETWEEN THE PARTIES HERETO THAT THIS PROMISSORY NOTE IS A RESCHEDULING OR REMMORTIZATION OF INSTALLMENTS OF A LOAN, WHICH DEBT IS EVIDENCED BY A PROMISSORY NOTE DATED 12-20-1982 IN THE ORIGINAL PRINCIPAL SUM OF $67,570.00 PLUS INTEREST AT THE RATE OF 05.75% PER ANNUM.  IT IS THE INTENT OF THE PARTIES THAT THIS NOTE EVIDENCES THE SAME DEBT AS EVIDENCED BY THE FORMER PROMISSORY NOTE AND DOES NOT DISCHARGE SUCH DEBT OR THE LIEN OF ANY INSTRUMENT SECURING ITS PAYMENT.


CARL PHILLIP SMITH


AS COSIGNER:


CORINNE SMITH

## EXHIBIT "C"

ADDENDUM TO PROMISSORY NOTE DATED MAY 15, 2002.

ALL OF THE GOVERNMENT FUNDS EVIDENCED BY THIS NOTE WERE
APPROVED PRIOR TO JUNE 24, 1986.  THEREFORE, THE "HIGHLY
ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT" PROVISION
OF THIS NOTE DOES NOT APPLY.


_____
CARL PHILLIP SMITH


AS COSIGNER:

_____
CORINNE SMITH

**EXHIBIT 20**

REPRODUCE LOCALLY. Include form number and date on all reproductions.

**FSA-1940-17**
(10-26-99)

**U.S. DEPARTMENT OF AGRICULTURE**
Farm Service Agency

## PROMISSORY NOTE

| | |
|---|---|
| 8. KIND OF LOAN | |

Type:  NP-SA

[✓] Regular

[ ] Limited Resource

Pursuant to:

[✓] Consolidated Farm & Rural Development Act

[ ] Emergency Agricultural Credit Adjustment Act of 1978

**1. Name**

SMITH, CARL PHILLIP

| 2. State | 3. County |
|---|---|
| OKLAHOMA | GARFIELD |

| 4. Case Number | 5. Date |
|---|---|
| 42-24-█████ | MAY 26, 2006 |

| 6. Fund Code | 7. Loan Number |
|---|---|
| 41 | 14 |

**9. ACTION REQUIRING NOTE**

| | | | |
|---|---|---|---|
| [ ] | Initial loan | [ ] | Rescheduling |
| [ ] | Subsequent loan | [✓] | Reamortization |
| [ ] | Consolidated & subsequent loan | [ ] | Credit sale |
| [ ] | Consolidation | [ ] | Deferred payments |
| [ ] | Conservation easement | [ ] | Debt write down |

FOR VALUE RECEIVED, the undersigned Borrower and any cosigners jointly and severally promise to pay to the order of the United States of America, acting through the Farm Service Agency, United States Department of Agriculture, (herein called the "Government"), or its assigns, at its office in 1216 WEST WILLOW ROAD, SUITE C : ENID, OKLAHOMA  73703

_____ , or at such other place as the Government may later designate in writing, the principal sum of

TWELVE THOUSAND AND NO/100------------------------------------------------------ dollars

($ 12,000.00 ), plus interest on the unpaid principal balance at the **RATE** of

FOUR AND ONE-QUARTER---------------------------------------- percent ( 04.2500 %) per annum and

ZERO------------------------------------------------ dollars ($ 0.00 )

of Noncapitalized interest.  If this note is for a Limited Resource loan (indicated in the "Kind of Loan" box above) the Government may **CHANGE THE RATE OF INTEREST**, in accordance with regulations of the Farm Service Agency, not more often than quarterly, by giving the Borrower thirty (30) days prior written notice by mail to the Borrower's last known address.  The new interest rate shall not exceed the highest rate established in regulations of the Farm Service Agency for the type of loan indicated above.

Principal and interest shall be paid in TWENTY-FIVE (25) installments as indicated below, except as modified by a different rate of interest, on or before the following dates:

| | | | |
|---|---|---|---|
| $ 789.00 on MAY 26, 2007 | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N.A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |
| $ N/A on N/A | ; $ N/A on N/A | ; |

and $ 789.00 thereafter on MAY 26 of each YEAR until the principal and interest are fully paid except that the final installment of the entire debtedness evidenced hereby, if not sooner paid, shall be due and payable TWENTY-FIVE (25) years from the date of this note, and except that prepayments may be made as provided below.  The consideration for this note shall also support any agreement modifying the foregoing schedule of payments.

If the total amount of the loan is not advanced at the time of loan closing, the loan funds shall be advanced to the Borrower as requested by Borrower and approved by the Government.  Approval by the Government will be given provided the advance is requested for a purpose authorized by the Government.  Interest shall accrue on the amount of each advance from its actual date as shown in the Record of Advances at the end of this note.  Borrower authorized the Government to enter the amount(s) and date(s) of such advance(s) in the Record of Advances.

*Position 2*

**FSA-1940-17** (10-26-99)                                                                                                    Page 2 of 3

For each rescheduled, reamortized or consolidated note for applications for Primary and Preservation Loan Service Programs received prior to November 28, 1990, interest accrued to the date of this instrument which is more than 90 days overdue shall be added to principal and such new principal shall accrue interest at the rate evidenced by this instrument. For applications for Primary and Preservation Loan Service Programs received on or after November 28, 1990, all unpaid interest accrued to the date of this instrument shall be added to the principal and such new principal shall accrue interest at the rate evidenced by this instrument.

Every payment made on any indebtedness evidenced by this note shall be applied first to a portion of any interest which accrues during the deferral period, second to accrued interest to the date of the payment on the note account and then to the principal. Nonprogram loans are not eligible for deferral.

Prepayments of scheduled installments, or any portion of these installments, may be made at any time at the option of the Borrower. Refunds and extra payments, as defined in the regulations (7 CFR § 1951.8) of the Farm Service Agency according to the source of funds involved, shall, after payment of interest, be applied to the last installments to become due under this note and shall not affect the obligation of Borrower to pay the remaining installments as scheduled in this note.

If the Government at any time assigns this note and insures the payment of it, Borrower shall continue to make payments to the Government as collection agent for the holder. While this note is held by an insured holder, prepayments made by Borrower may, at the option of the Government, be remitted by the Government to the holder promptly or, except for final payment, be retained by the Government and remitted to the holder on an installment due date basis. The effective date of every payment made by Borrower, except payments retained and remitted by the Government on an installment due date basis, shall be the date of the United States Treasury check by which the Government remits the payment to the holder. The effective date of any prepayment retained and remitted by the Government to the holder on an installment due date basis shall be the date of the prepayment by Borrower, and the Government will pay the interest to which the holder is entitled accruing between such date and the date of the Treasury check to the holder.

Any amount advanced or expended by the Government for the collection of this note or to preserve or protect any security for the loan or otherwise expended under the terms of any security agreement or other instrument executed in connection with the loan evidenced by this note, at the option of the Government shall become a part of and bear interest at the same rate as the principal of the debt evidenced by this note and be immediately due and payable by Borrower to the Government without demand.

Property constructed, improved, purchased, or refinanced in whole or in part with the loan evidenced by this note shall not be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. Unless the Government consents otherwise in writing, Borrower will operate such property as a farm if this is a Farm Ownership loan.

If "Consolidation and subsequent loan," "Debt write down," "Consolidation," "Rescheduling," or "Reamortization" is indicated in the "Action Requiring Note" block in Item 9 above, this note is given to consolidate, reschedule or reamortize, but not in satisfaction of the unpaid principal and interest on the following described note(s) or assumption agreement(s) (new terms):

| FUND CODE/ LOAN NO. | FACE AMOUNT | INTEREST RATE | DATE (include year) | ORIGINAL BORROWER | LAST INSTALL. DUE (include year) |
|---|---|---|---|---|---|
| 41-08 | $ 50,108.59 | N/A % | 04-10-1996 | SMITH, CARL PHILLIP | 04-10-2006 |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |
| | $ | % | | | |

Security instruments taken in connection with the loans evidenced by these described notes and other related obligations are not affected by this consolidating, rescheduling or reamortizing. These security instruments shall continue to remain in effect and the security given for the loans evidenced by the described notes shall continue to remain as security for the loan evidenced by this note, and for any other related obligations.

**REFINANCING (GRADUATION) AGREEMENT:** If at any time it shall appear to the Government that the Borrower may be able to obtain financing from a responsible cooperative or private credit source at reasonable rates and terms for loans for similar purposes and period of time, Borrower will, at the Government's request, apply for and accept a loan(s) in sufficient amount to pay this note in full and, if the lender is a cooperative, to pay for any necessary stock. The provisions of this paragraph do not apply if the loan represented by this promissory note was made to the Borrower as a non-program loan.

*The U.S. Department of Agriculture (USDA) prohibits discrimination in all its programs and activities on the basis of race, color, national origin, gender, religion, age, disability, political beliefs, sexual orientation, and marital or family status. (Not all prohibited bases apply to all programs.) Persons with disabilities who require alternative means for communication of program information (Braille, large print, audiotape, etc.) should contact USDA's TARGET Center at (202) 720-2600 (voice and TDD). To file a complaint of discrimination, write USDA, Director, Office of Civil Rights, Room 326-W, Whitten Building, 1400 Independence Avenue, SW, Washington, D.C. 20250-9410 or call (202) 720-5964 (voice or TDD). USDA is an equal opportunity provider and employer.*

FSA-1940-17 (10-26-99)                                                                         Page 3 of 3

**HIGHLY ERODIBLE LAND AND WETLAND CONSERVATION AGREEMENT:** Borrower recognizes that the loan described in this note will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.  If (1) the term of the loan exceeds January 1, 1990, but not January 1, 1995, and (2) Borrower intends to produce an agricultural commodity on highly erodible land that is exempt from the restrictions of Exhibit M until either January 1, 1990, or two years after the Natural Resources Conservation Service (NRCS) has completed a soil survey for the Borrower's land, whichever is later, the Borrower further agrees that, prior to the loss of the exemption from the highly erodible land conservation restrictions found in 7 CFR Part 12, Borrower must demonstrate that Borrower is actively applying on that land which has been determined to be highly erodible, a conservation plan approved by the NRCS or the appropriate conservation district in accordance with NRCS's requirements.  Furthermore, if the term of the loan exceeds January 1, 1995, Borrower further agrees that Borrower must demonstrate prior to January 1, 1995, that any production of an agricultural commodity on highly erodible land after that date will be done in compliance with a conservation system approved by NRCS or the appropriate conservation district in accordance with NRCS's requirements.

**DEFAULT:** Failure to pay when due any debt evidenced by this note or perform any covenant of agreement under this note shall constitute default under this and any other instrument evidencing a debt of Borrower owing to, insured or Guaranteed by the Government or securing or otherwise relating to such debt; and default under any such other instrument shall constitute default under this note. **UPON ANY SUCH DEFAULT**, the Government at its option may declare all or any part of any such indebtedness immediately due and payable.

This Note is given as evidence of a loan to Borrower made or insured by the Government pursuant to the Consolidated Farm and Rural Development Act, or the Emergency Agricultural Credit Adjustment Act of 1978 and for the type of loan as indicated in the "Kind of Loan" block above.  This Note shall be subject to the present regulations of the Farm Service Agency and to its future regulations not inconsistent with the express provisions of this note.

Presentment, protest, and notice are waived.

(SEAL)

CARL PHILLIP SMITH                                        _(Borrower)_

CORINNE SMITH                                             (CO-SIGNER)

RR 1 BOX 77

HUNTER    OK   74640

## RECORD OF ADVANCES

| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
|--------|------|--------|------|--------|------|
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| $ | | $ | | $ | |
| | | | **TOTAL** | $ | |

Note:   The United States of America, acting through Farm Service
        Agency (FSA), formerly known as Consolidated Farm Service
        Agency, formerly known as Farmers Home Administration.

*Amortized*

FmHA Instruction 1951-S
Exhibit D to Subpart S

SHARED APPRECIATION AGREEMENT

This Agreement is entered into between Farmers Home
Administration (FmHA) and Carl P. Smith, a single person (called
"Borrower") on April 10, 1996 and expires on April 10, 2006
(maximum term of ten (10) years).

Borrower is indebted to FmHA for loan(s) as evidenced by the
note(s) described below:

| Date | Principal Amount | Interest Rate | Due Date |
|------|-----------------|---------------|----------|
| 07-30-1986 | $137,551.81 | 05.00% | 07-30-2019 |
| 07-30-1986 | $ 72,634.05 | 05.00% | 07-30-2022 |

This Agreement is attached to the note(s) described above.  As of
the date of this Agreement, before write-down, the unpaid
principal balance on this note was $196,071.13 and the unpaid
interest balance was $15,625.56.  These note(s) were modified by
the following note(s) which are attached to note(s) described
above.

| Date | Principal Amount | Interest Rate | Due Date |
|------|-----------------|---------------|----------|
| 04-10-1996 | $137,375.69 | 03.00% | 04-10-2018 |
| 04-10-1996 | $ 24,212.41 | 05.00% | 04-10-2022 |

The note(s) described above are secured by the following real
estate security instruments:

| Grantor | Date of Security Instrument | Records of County | State | Book or Reel | Page |
|---------|----------------------------|-------------------|-------|--------------|------|
| CARL P. SMITH, a single person | | aka Carl Phillip Smith | | | |
| | 05-16-1979 | Garfield, OK | | 685 | 560 |
| | 12-20-1982 | Garfield, OK | | 842 | 114 |
| | 12-20-1982 | Grant, OK | | 358 | 99 |

As a condition to, and in consideration of, FmHA writing down the
above amounts and restructuring the loan, Borrower agrees to pay
FmHA an amount according to one of the following payment
schedules:

1.   Seventy-five (75) percent of any positive appreciation in the market value of the property securing the loan as described in the above security instrument(s) between the date of this Agreement and either the expiration date of this Agreement or the date the Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs four (4) years or less from the date of this Agreement.

2.   Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above as described in the security instruments between the date of this Agreement and either the expiration date of this Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four (4) years but before the expiration date of this Agreement.

The amount of recapture by FmHA will be based on the difference between the value of the security at the time of disposal or cessation by Borrower of farming and the value of the security at the time this Agreement is entered into.  If the borrower violates the term of this agreement FmHA will liquidate after the borrower has been notified of the right to appeal.

Market value of the property securing loan(s) $128,000.00.

Net recovery value of property securing loan(s) $67,488.00.

Amount of write-down $50,108.59.

Amount of Account Equity $50,108.59.

_____
CARL P. SMITH

AS COSINGER:

_____
CORINNE SMITH

_____
JAMES L. MCDANIEL, JR.
Agriculture Credit Manager

41-08

EXHIBIT 21

## ACCOUNT STATUS

| Borrower: | Carl Phillip Smith | Case number: | 42-24-xxxxx7476 |
| --- | --- | --- | --- |
| Co-Borrower: | Corrine Smith (deceased) | Current date: | 5/13/2019 |

| Loan Code | Loan Type | Date of note | Principal Amount | Interest Rate | Unpaid Principal | Unpaid Interest | Daily Accrual | Amount Ahead (A) or Behind (B) |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 41-01 | FO | 05/16/79 | $135,000.00 | 3.00% | Reamortized to Loan No. 41-04 | | | |
| 41-04 | FO | 07/30/86 | $ 137,551.81 | 5.00% | Reamortized to Loan No. 41-06 | | | |
| 41-06 | FO | 04/10/96 | $ 137,375.69 | 3.00% | Reamortized to Loan No. 41-11 | | | |
| 41-11 | FO | 05/15/02 | $ 117,487.53 | 3.00% | $ 83,048.19 | $ 34,738.96 | 11.9453 | $ 96,745.36 (B) |
| 41-11 | recosts | 04/08/19 | $ 9,218.42 | 5.25% | $ 7,481.02 | $ 264.07 | 1.076 | $ 7,405.06 (B) |
| | | | | | | | | |
| 41-02 | FO | 12/20/82 | $ 67,570.00 | 5.75% | Reamortized to Loan No. 41-05 | | | |
| 41-05 | FO | 07/30/86 | $ 72,634.05 | 5.00% | Reamortized to Loan No. 41-07 | | | |
| 41-07 | FO | 04/10/96 | $ 24,212.41 | 5.00% | Reamortized to Loan No. 41-12 | | | |
| 41-12 | FO | 05/15/02 | $ 30,064.61 | 5.25% | $ 18,606.22 | $ 6,046.29 | 2.6762 | $13,923.00 (B) |
| | | | | | | | | |
| 44-08 | OL | 01/16/01 | $ 10,000.00 | 5.00% | Rescheduled to Loan No. 44-13 | | | |
| 44-13 | OL | 05/15/02 | $ 10,617.06 | 4.75% | Paid in full | | | |
| | | | | | | | | |
| 41-14 | SAA | 05/26/06 | $ 12,000.00 | 4.25% | $ 11,554.86 | $ 5,268.71 | 1.3454 | $ 7,890.00 (B) |
| | | | | | | | | |
| Total | | | | | $ 120,690.29 | $ 46,318.03 | 17.0429 | $ 125,963.42 (B) |

(Include and fully describe all rescheduled, reamortized, consolidated, debt set-aside, and deferred
notes, and assumption agreements above.  Staple any rescheduled notes, etc. to the active note.
Example:  44-01 and 44-02 rescheduled and consolidated to 44-03.)

**TOTAL PAYOFF:**     **$  167,008.32**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV- |
| | ) | |
| 2. CARL PHILLIP SMITH, | ) | |
| 3. THE SUCCESSORS OF CORINNE SMITH, | ) | |
| (Deceased), | ) | |
| 4. FARM CREDIT OF ENID, formerly | ) | |
| FEDERAL LAND BANK OF WICHITA, | ) | |
| 5. OKLAHOMA AG CREDIT, formerly | ) | |
| PRODUCTION CREDIT, | ) | |
| 6. STATE OF OKLAHOMA, EX REL., | ) | |
| OKLAHOMA TAX COMMISSION, | ) | |
| 7. GRANT COUNTY TREASURER, | ) | |
| 8. GRANT COUNTY BOARD OF COUNTY | ) | |
| COMMISSIONERS, | ) | |
| 9. GARFIELD COUNTY TREASURER, | ) | |
| 10. GARFIELD COUNTY BOARD OF | ) | |
| COUNTY COMMISSIONERS, | ) | |
| | ) | |
| Defendant(s). | ) | |

## VERIFICATION OF UNITED STATES

| | |
|---|---|
| STATE OF OKLAHOMA | ) |
| | ) *SS:* |
| COUNTY OF MAYES | ) |

I, Melissa Cook, Farm Loan Specialist, am familiar with the books and records of Farm Service Agency regarding the account of Defendants Carl Phillip Smith and the Successors of Corinne Smith (deceased) and do hereby state and verify, as follows:

1.    I have examined Promissory Notes and Statement of Account and have verified the accuracy of the amount owing to the United States.

2.    That I have read the Complaint to be filed of record with this Court. I have knowledge of the facts and figures stated therein; and that I believe the statements of fact and figures set forth are true and correct.

3.    This account is now in default.

Dated:

2/21/2020

_____
MELISSA COOK
Farm Loan Specialist

**STATE OF OKLAHOMA**    )
                                          )  *SS*
**COUNTY OF MAYES**        )

Before me on _____2/21/2020_____, personally appeared Melissa Cook, known by me to be the identical person who executed this instrument and acknowledged to me that the same is true and correct.

Witness my hand and seal the day and year written above.

My Commission Expires:

> TAMARA DAWN RAY
> Notary Public, State of Oklahoma
> Commission # 15010912
> My Commission Expires 12-09-2023

Comm. No.

_____
NAME OF NOTARY, Notary Public

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| **I. (a)  PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| UNITED STATES OF AMERICA | CARL PHILLIP SMITH, AND THE SUCCESSORS OF CORINNE SMITH, (deceased), et al. |

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Garfield
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Kay Sewell
Assistant United States Attorney, OBA #10778
210 W. Park Ave, Suite 400
Oklahoma City, OK 73102
405-553-8807 405-553-8885-FAX

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1   U.S. Government
       Plaintiff

☐ 3   Federal Question
       *(U.S. Government Not a Party)*

☐ 2   U.S. Government
       Defendant

☐ 4   Diversity
       *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | | ☐ 895 Freedom of Information Act |
| ☒ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

☒ 1   Original
       Proceeding

☐ 2   Removed from
       State Court

☐ 3   Remanded from
       Appellate Court

☐ 4   Reinstated or
       Reopened

☐ 5   Transferred from
       Another District
       *(specify)*

☐ 6   Multidistrict
       Litigation

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1345
Brief description of cause:
Foreclosure

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
167,008.32

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☐ Yes   ☒ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/24/2020 | /s/ Kay Sewell, AUSA, OBA #10778 |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

| Print | Save As... | | Reset |